ANGELINA, The, (DAY v.)

[See Lachenmeyer v. The Angelina, Case No. 7,967.]

---

ANGELINA, The, (LACHENMEYER v.)

[See Lachenmeyer v. The Angelina, Case No. 7,967.]

---

ANGELINA, The, (WATSON v.)

[See Lachenmeyer v. The Angelina, Case No. 7,967.]

---

## Case No. 384.

### The ANGELINA CORNING.

[1 Ben. 109.][1]

District Court, E. D. New York.   Feb., 1867.

TOWBOAT—UNKNOWN ROCK IN CHANNEL—MISFORTUNE.

1. Where a canal boat was being towed by a steamtug at the end of a hawser, with two other boats, she being the middle one, through the Kills on the north shore of Staten island, and brought up upon a single rock lying some two hundred feet from the end of a dock, the existence of such rock being proved not to be known to persons familiar with those waters, the tow at the time not being in line with the steamtug, but having sagged off inshore, *Held*, that a steamtug is not a common carrier of the vessel she tows.

[Cited in Powell v. The Willie, 2 Fed. 97; The Pierrepont, 42 Fed. 688.]

[See The America, Case No. 282.]

[See, also, note at end of case.]

2. That even common carriers are not held responsible for running upon rocks not generally known, and a fortiori steamtugs would not be.

3. That even though this tow was not in line with the towboat, but had sagged off towards the land, it is immaterial whether this was chargeable to the canal boat or the towboat, for there was nothing to indicate that any danger would be incurred by the sagging of the tow. So long as it was kept at a safe distance from the shore and from all other known objects, there was no negligence in any one which can be held to be the cause of the accident.

[Distinguished in The Stranger, Case No. 13,525.]

4. That the facts make out a case of misfortune, where the loss must be borne by the vessel on which it fell.

In admiralty. The facts are stated in the opinion of the court.

Owen, Gray & Owen, for libelant.

Benedict, Tracy & Benedict, for respondent.

BENEDICT, District Judge. This action is brought by John B. Hinckley, the owner of the canal boat Oswego, against the towboat Angelina Corning, to recover $2,455

[1][Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

damages, caused by the sinking of the Oswego while being towed through the Kills by the Corning, in May, 1867. The Corning was bound from New Brunswick to New York with a tow of five boats arranged in two tiers. The first tier was composed of three boats, the Oswego being the middle one. The other two boats formed the second tier. The tide was flood, and the wind blew freshly from the N. W. After leaving Elizabeth, the tow passed by Shooters' island on the south side, and then kept towards the Staten island shore, running along that shore as near as was deemed safe in order to take advantage of the slack water there. When the tow had reached about up to the ship yard dock, which is to the west of Mushrose reef, and, according to some witnesses, shortly after the steamboat had changed her course to pass across to the Jersey shore, as is usual with such a tide, but, according to others, before the steamboat had made any such change, the Oswego, being the middle boat in the second tier, suddenly brought up hard and fast on a sunken rock whence it was found impossible to pull her off. She was accordingly left a total loss. No other boat was injured.

This rock on which the Oswego struck, as is made very clear by the evidence, was wholly unknown to navigators and to residents of the neighboring locality. It is not laid down in the charts, and there was nothing to indicate its existence to persons in charge of the Corning. Its position has since been ascertained by actual measurement to be two hundred feet out from the corner of the nearest dock, and, on examination, it proves to be a single stone about five feet square, lying several feet under water at the lowest tides. Around it on all sides the water is deep, and the ferry boats and other vessels have been accustomed to pass with safety inside of it wholly ignorant of the presence of such a danger.

No witness says that prior to this accident it was deemed unsafe for vessels to go as near the shore as this tow did, and on this occasion the striking of the canal boat on the rock was the first notice to any one of the presence of any danger.

These facts, and they are not really disputed, make a case of misfortune where the loss must be borne by the vessel on which it fell. The steamboat was not a common carrier; and to render her liable for the loss of the canal boat, it must appear to have been caused by some negligence on her part. No negligence is here shown. The tow was proceeding at a proper speed where the pilot had a right to suppose it could safely go. No known risk was run, and no needed precaution omitted.

But it is charged that it is the duty of the pilot of a towboat to see that the tow follows straight behind, and that in this case the tow was allowed to hang off some distance to leeward, and thereby the Oswego

got upon the rock. Upon the evidence, I am inclined to think that shortly before the Oswego struck, the steamboat had altered her course to pass to the other side of the Kills, and it is quite certain that at the time of striking the tow was hanging off to leeward; and it is doubtless true, that had it been following directly behind the steamboat, the boats would have passed safely as the steamboat herself did. But whether this is chargeable to the pilot of the steamboat or to the men on the Oswego, is immaterial, for there was nothing to indicate that any danger would be incurred by the sagging of the tow. It is not the case of an undertaking by the pilot to execute an unusual and dangerous manoeuvre. Here the Oswego, when she struck, was where, according to all the knowledge possessed by any one, she could safely go. So long as the tow was kept at a safe distance from the shore, and from all other known objects, there was no negligence in any one which can be held to be the cause of the disaster. It was simply running on a rock which the pilot did not know of, and of which on the evidence he cannot be chargeable with knowledge. For running on rocks not generally known, even common carriers are not held responsible. Story, Bailm. § 516; Ang. Carr. § 182. A fortiori towboats should not be.

In the case of The Tempest, [Case No. 13,824,] Betts, J., the towboat was held not liable when a schooner being towed alongside was run on a rock at the foot of Tenth street.

In the case of The R. L. Stevens, the same ruling was made, although the stern tow struck a wharf. The present case seems clearly within the principle of those cases, and the result must be the same. The libel is accordingly dismissed.

[NOTE. "An engagement to tow does not impose either an obligation to insure or the liability of common carriers. The burden is always upon him who alleges the breach of such a contract to show either that there has been no attempt at performance, or that there has been negligence or unskillfulness to his injury in the performance. The contract requires no more than that he who undertakes to tow shall carry out his undertaking with that degree of caution and skill which prudent navigators usually employ in similar services. But there may be cases in which the result is a safe criterion by which to judge of the character of the act which caused it." Mr. Justice Strong, in The Webb, 14 Wall. (81 U. S.) 406. If a barge is sunk by contact with ice while being towed by a tug, the owner of the cargo must show negligence on the part of the tug to recover for the loss. The W. E. Gladwish, Case No. 17,355. See, also, The Brazos, Id. 1,821; The Mary McKillop. 23 Fed. 829; The Snap, 24 Fed. 292; The B. B. Saunders, 25 Fed. 729; The Bordentown, 16 Fed. 270; Molenbrock v. St. Louis & Clarksville Packet Co., Id. 878; Philadelphia & R. R. Co. v. New England Transp. Co., 24 Fed. 505; The Young America, 26 Fed. 174; The William N. Beach, 29 Fed. 303; Brawley v. The Jim Watson, Case No. 1,817; The Lyon, Id. 8,645; The Stranger, Id. 13,525; The Oconto, Id. 10,421; The Fannie Tuthill, 12 Fed. 446.]