JOHN P. GAULDEN, plaintiff in error, *vs.* WILLIAM J. LAW-
RENCE, defendant in error.

1. The forgetfulness by a party of a material fact on the trial is not a
   sufficient ground for a new trial.
2. Where notes are of the same date with the bill of sale, and cut from
   the same piece of paper, the presumption is that they were given for
   the property conveyed by the writing.
3. Natural infirmities in a slave may be presumed to be inherent. This
   presumption may be rebutted, however, by showing that they are
   attributable to other causes.

Complaint. In Decatur Superior Court. Tried before
Judge ALLEN. At April Term, 1860.

On the 8th day of July, 1855, William J. Lawrence, the
defendant in error, sold to John P. Gaulden, the plaintiff in
error, a negro girl, slave, by the name of Phœbe, for the
sum of $950 00. For a part of the purchase price, Gaulden
gave his two promissory notes, payable to Lawrence or bearer,
one for $70 00, due one day after date, and the other for
$625 00, due the 1st day of January, 1856.

Lawrence executed to Gaulden a bill of sale for the slave,
in which he warranted (amongst other things) that the negro
girl was "*sound in body and mind, and a number one slave.*"

Gaulden paid $200 00 on the notes, on the 12th day of
February, 1856, which was placed as a credit on one of the
notes.

On the 2d of October, 1857, Lawrence instituted an action
against Gaulden, to recover the amount due on the notes.

To this action Gaulden set up, by way of defence, that the
negro was unsound, possessed many bad qualities, and was
not a number one slave, and that, therefore, the warranty had
been broken, the consideration of the notes sued on had par-
tially failed, the negro girl not being worth exceeding
$400 00.

Upon the trial of the case, the plaintiff introduced in evi-
dence the notes sued on, and closed his case.

In support of his plea, the defendant introduced the bill

of sale, and proved by two witnesses, who first became acquainted with the negro in January, 1858, and in January, 1859, that she complained of pains in the side, back and breast; that she was lazy, slothful, indolent and slovenly ; that she required a great deal of attention and driving to get any work out of her; and that, with all attention and driving, the witnesses, who had the charge of her, could not make her do more than half the labor of an ordinary hand of the same appearance ; that, for their own use, the witnesses would not have the negro as a gift; that she was worthless ; that they tried her at hoeing, ploughing, picking cotton, and other plantation work; that at these various items of work, she did less than half work, and that she was unfit for a house servant.

After the testimony had closed, the presiding Judge charged the jury, "that if they believed that the negro was not a number one slave at the time of the sale, but was idle, and incapable of doing the labor of a good slave, and was less valuable on that account, that they should make an allowance to the defendant according to their opinion of her true value; that is, if she was only worth half so much, they should make a deduction of one-half, or more, or less, according as the evidence satisfied them that she was worth more or less than half the amount paid for her, and for which she was sold ; that if the evidence convinced them that she was worthless, or was unable to do ordinary work in 1858 and 1859, it was evidence of her condition and qualities at the time of the sale, becoming weaker as the period of time became more remote from the time of sale."

Upon the facts and charge aforesaid, the jury rendered a verdict in favor of the plaintiff for $695, with interest and cost of suit.

Counsel for defendant then moved for a new trial of the case on the grounds : 1, that the verdict was contrary to law and evidence; 2, that the verdict was contrary to the charge of the Court hereinbefore set forth ; 3, on account of newly discovered evidence.

This last ground was supported by the affidavit of the

witness as to the facts which he would testify to, and by the affidavit of the defendant, that those facts, though known to him, had escaped his memory, until suggested to him after the trial of the case.

The presiding Judge overruled the motion for a new trial, and that decision is excepted to, and error assigned thereon.

ISAAC E. BOWER, for plaintiff in error.

P. J. STROZIER, representing LAW & SIMS, *contra.*

*By the Court*—LUMPKIN, J., delivering the opinion.

We could not send this case back on account of the newly discovered evidence.   If the forgetfulness of a party, at the trial, of a material fact, were held to be a sufficient reason to grant a new trial, it would be productive of great mischief, by encouraging the grossest neglect in the preparation of a cause.

Neither does the obvious mistake of the jury in not allowing the credit of $200, endorsed on one of the notes given in payment for the negro, constitute a good ground for a rehearing.   The plaintiff could be compelled to count that amount off his judgment under an order of this Court.

Neither can we suppose there was any doubt in the minds of the jury as to the identity of the notes.   Counsel for the defendant suggests that this may have been the reason why they found as they did.   The notes bore the same date with the bill of sale, and were cut from the same sheet of paper on which the warranty was written.   At any rate, this was enough to put the plaintiff upon proof that they were founded upon some other consideration.   If the jury put their verdict upon this ground, which we apprehend they did not, it would, for this reason, be decidedly against the weight of evidence.

There is one ground upon which we feel constrained to grant a new trial in the case.   This sale was made in 1855, Phœbe was warranted to be a number one negro.   The testimony in 1858 and 1859 is, that " she was lazy, slothful,

indolent and slovenly, requiring a great deal of attention and driving to get any work out of her, and then she could only be induced to do half as much work as an ordinary hand of the same appearance." The witnesses testify that she was worthless, and that they would not have her as a gift. Was Phœbe a number one negro in 1855 ? Physical diseases may have supervened since the sale, but these traits of character originated in natural infirmities which grew with the growth of the woman; and Lawrence, the vendor, produced no proof to contradict this conclusion. Had he shown that in 1855 Phœbe was as he warranted her to be, a number one negro, that John P. Gaulden was a cruel or merciless man to his slaves, the jury might have concluded that the conduct of the woman was attributable to the change in her treatment. But no attempt was made to show that she was different in 1855, when he sold her. The jury then were bound to reduce the price one half, or more or less, as in their opinion, and as instructed by the Court, she fell short of a number one negro. Mr. Gaulden may be an unpopular man. Character may have much to do in cases which involve character. But in questions of property—*meum* and *teum*—the measure of any other citizen's rights is the measure of John P. Gaulden's rights.

Let the judgment be reversed.