Choate, D. J.
This is a libel to recover, against the steam-tug Willie, the value of the cargo of the canal-boat Nightingale, alleged to have been lost through the negligence and unskilfulness of those in charge of the Willie, which had the canal-boat in tow. The Nightingale was loaded with coal, and was taken in tow by the Willie at New Brunswick, N. J., on the tenth day of October, 1873, to be towed to the Montclair railroad bridge, in the Hackensack river. At that time there was, and for a short time before had been, a landing *96 place for canal-boats laden with coal on the south side of said bridge, with a derrick arranged on the bridge for the purpose of discharging the boats upon cars standing on the railroad track. This was the point to which the captain of the canal-boat asked to be towed, and the Willie undertook the service.
When they arrived within a short distance of the bridge the tide was still flood, and setting directly up the river, and against the bridge, which crosses the river at that place at a right angle. The bridge is an open spile bridge, through which the tide flows. The tug rounded to so as to head the tide, and took the canal-boat on a hawser. She then let the boat fall showly back against the spiles of the bridge, by rendering the hawser, the tug working her engines sufficiently to hold her position in the river. The stern of the canal boat was thus brought up against one of the spiles of the bridge. This was done without injuring the boat, and with great care and caution on the part of the tug. In order to bring the canal boat into her proper position alongside of the bridge it was then necessary to swing her round with her head to the west against the bridge. This was done by slowly rendering the hawser; but when she got round so that her starboard-side came against the spile next to that at her stern, a brace, or piece of timber, running diagonally from spile to spile across the bridge, and at that point projecting beyond the spile, beneath the surface of the water, pierced her side, and she began to leak and to sink rapidly. On the discovery of the injury the tug tried to beach her, but was unable to hold her up on the bank, and she slid off into deep water, and the cargo was lost.
The evidence is entirely satisfactory that the tug was proceeding with due and proper care and skill to land the boat at the time she was injured, so far as relates to the management of the tug and tow, and that those in charge of the tug had no knowledge of the obstruction under water with which she came in contact. It was fully proved that if there had been no such projecting obstruction under water the mode adopted for landing the canal-boat would have been a prudent and *97 proper mode of landing her, and one which it was entirely safe to attempt without waiting for slack water, although it was one which required great care on the part of the tug to prevent too violent a contact between the boat and the bridge, and it was shown that this degree of care was exercised.
The only question is whether the tug is chargeable with negligence in not knowing of this obstruction under water. The cases of common carriers, and of owners or lessees of piers and wharves, which have been cited on the part of the libellants, have no application. Common carriers are hable for injuries caused by the negligent acts of third parties, because being liable except for the act of God. The negligence of third persons in leaving hidden artificial obstructions in the way is not within the exception. Trent Nav. Co. v. Wood, 3 Espinasse, 131; Oakley v. Packet Co. 31 Eng. L. & Eq. 530; S. C. 11 Exch. 618; Steamboat Co. v. Tiers, 4 Zabriskie, 697.
So owners or lessees of piers assume a duty in respect thereto, and the approaches to them, towards other parties who may have occasion to use the wharves for landing places, the neglect of which is clearly negligence. Mersey Dock, etc., v. Gibbs, 11 H. of L. Cas. 687; Leary v. Woodruff, 4 Hun, 99; Carleton v. Iron Co. 99 Mass. 216.
But this tug is liable for her own negligence only. In rendering this service she was not a common carrier. The Angelina Corning, 1 Ben. 109; The America, 6 Ben. 122. Nor did her owners control or have any interest in this bridge, or landing place, so far as shown. They had no more duty with respect to its condition than the libellants had who employed the tug to take them there. There was nothing in the appearance of the bridge itself to suggest or raise a suspicion of any obstruction of this kind under water. It is true that braces could be seen crossing from side to side, and connecting the spiles in each bay of spiles, and it could be seen that these braces passed down diagonally into the water, and it was to be inferred from their appearance, position, and evident purpose, that the lower ends of them were fastened to the outer *98 most spiles below the surface of the water, but there was nothing to indicate that they protruded beyond the spiles; and in view of the fact that this was a landing place in actual use, as was indicated by the derrick, I do not think that the exercise of ordinary care called upon those in charge of the tug to anticipate that the ends of these braces might so protrude. On the contrary, it seems to me that any person, having occasion to use the landing place would, without any thought of danger of this character, bring his boat up to the landing place in entire confidence that the place had been made safe for the approach of boats.
The danger could not be seen by persons going up and down the river in tugs. It could only be discovered by an examination under the water by a person going very close to the bridge. At low tide the obstruction was a little below the surface of the water. Subsequent examination disclosed the fact that the braces projected more or less at every spile, and had been somewhat worn off by frequent contact with boats lying there. The one which the Nightingale struck against projected far enough to push a hole in her side as she was let down very slowly against the bridge. It made it dangerous to land a loaded boat, as she was landed, with the tide, but those in charge of the tug were not, in my opinion, at fault or chargeable with negligence in not knowing that the obstruction was there.
It is doubtless true that a tug is bound to know, and avoid, so far as reasonable care and skill can do it, those dangerous points in the navigation, upon the voyage undertaken, which are well known to the public generally, and also such other obstructions and dangers as are in fact known to those in charge of the tug. But it would be holding her to a higher degree of care than the law imposes on her, to charge her with negligence in not knowing of a hidden projection unknown to her, dangerous to her tow, at a landing place selected by the tow, and which, from its evident actual use as a landing place for such a tow, those in charge of the tug may have reasonably inferred was suitable for the purpose to which it was put.
*99 It is suggested that the tug should have waited two hours for slack water, and not attempted the landing at flood tide. But the proof is that hut for this obstruction, which was wholly unknown, it was a safe and prudent course to land the boat as she was in course of landing at the time of the accident. Therefore, there was no duty to wait for a change of tide.
It is also suggested that she should have taken the canal-boat through the draw and landed her on the north side of the bridge, from which place she could have hauled round to her berth at slack water. The same answer applies to this suggestion, that what they did was safe and prudent, so far as they are chargeable with a knowledge of their situation; and to this suggestion there is the further answer, that as there was no place at the bridge apparently used as a landing place, except this berth under the derrick, the tug would have had no right to subject the tow to the unknown dangers that might exist under the water at other parts of the bridge. If, in attempting to bring the boat up against the north side of the bridge, she had struck such a projecting brace, the tug could not defend her course in taking her tow to a place not apparently fitted for a landing place. In taking her there without necessity, she would clearly assume the risk of hidden dangers that might be there.
The case of Dowdall v. The Pennsylvania Railroad Co. 13 Blatch. 408, is referred to as sustaining this libel. It is true that the jury in that case found the owner of this tug guilty of negligence for the loss of this canal-boat at the same place. The case is not claimed to be a decision conclusive of the fact in the present case as an estoppel by record. But it is claimed that the instructions of Mr. Justice Hunt to the jury were such as to charge the tug with negligence in not knowing of the obstruction. The court left the question of negligence to the jury as a question of fact, and to the submission of this question generally the defendant appears not to have excepted. The court charged “that the defendants were Bound to possess a knowledge of the dangers of the navigation they undertook, ” and to this defendants excepted.
*100 The defendants’ counsel requested the court to charge “that if the jury find that the accident would not have happened but for the projecting timbers on the bridge, and that such projecting timbers were unknown to the defendants, they are not liable.” The court refused so to charge, except in connection with the additional inquiry whether, as navigators, the defendants, or their agents, ought not to have known of the existence of the said timbers. To this refusal the defendants excepted. This last exception seems not to have been argued upon the motion for a new trial. It does not appear what the court had charged as to the liability of the defendants in connection with the question whether, as navigators, the defendants, or their agents, ought not to have known of the existence of the timbers except as above stated; nor what evidence there was, in that case, of the defendants’ opportunities of discovering the danger. The case made up for the motion for a new trial does not give all the evidence, nor state that the whole of the charge is set out. The ruling is not, therefore, of that unqualified character and certainty that I feel bound to regard it as a conclusive precedent against my clear conviction that the tug is not chargeable, on the facts proved in this case, with negligence in not knowing of this danger.
Libel dismissed, with costs.