STEVENS v. MARITIME WAREHOUSE CO., Inc.

(Circuit Court of Appeals, Second Circuit. January 14, 1920.)

No. 109.

1. WHARVES ☞20(7)—LIBELANT, CLAIMING THAT BERTH WAS UNSAFE, HAS BURDEN OF PROOF.

A libelant, claiming that a warehouse and dock owner maintained a berth in a dangerous condition, has the burden of showing that fact by a fair preponderance of the evidence.

2. WHARVES ☞20(1, 7)—WHARFINGER BOUND TO EXERCISE ONLY ORDINARY CARE; WANT OF CARE NOT PRESUMED.

A wharfinger is bound to exercise only ordinary care, and lack of such care is never presumed, even though the circumstances shift the burden of producing further evidence to the wharfinger.

3. WHARVES ☞20(7)—EVIDENCE INSUFFICIENT TO ESTABLISH CAUSE OF ACTION FOR NEGLIGENCE.

Evidence regarding the circumstances under which a lighter moored to respondent's bulkhead and warehouse listed while the tide was low, and later broke loose, floating to another mooring place, etc., *held* not to show whether the lighter suffered any damage at respondent's bulkhead, and, if so, of what such damage consisted, or how it was received.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by William Stevens against the Maritime Warehouse Company, Incorporated. From a decree dismissing the libel, libelant appeals. Affirmed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Theodore L. Bailey, of New York City (Oscar S. Blinn, of New York City, of counsel), for appellant.

Foley & Martin, of New York City (George V. A. McCloskey and William J. Martin, both of New York City, of counsel), for respondent.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge. The libel alleges that in September, 1917, respondent maintained a warehouse, and a dock or bulkhead in front thereof, in the borough of Queens, New York City, commonly known as the Ravenswood dock.

At about 10 a. m. on the 1st of that month the lighter Dutch Boy arrived "opposite said warehouse and bulkhead," and at about 11 a. m. was tied up to the said bulkhead for the purpose of discharging the cargo with which she was laden. At about 3 p. m. the lighter was discovered to be listing heavily, and as the tide went out was "stranded on a rock or ledge or some other obstruction in the berth," as the result of which stranding the Dutch Boy was injured to the extent of several thousand dollars.

Liability is asserted because the respondent maintained the berth in front of its dock in a dangerous condition, and failed to give to the master of the Dutch Boy due warning thereof. The answer alleged that the berth in question was safe for such vessels as the Dutch Boy, and that that vessel parted her lines and drifted away from said dock, and thereafter lay for a long time unattended at a wholly different mooring place, where "there were many rocks of considerable size and little water at low tide."

[1, 2] The duty was on libelant, even under the generous pleading of admiralty, to prove by a fair preponderance of evidence the substance of its libel. The liability asserted against respondent was that of a wharfinger, who is bound to ordinary care and diligence and no more (Morey v. New Rochelle, 254 Fed. 425, 166 C. C. A. 57); and such lack of care is never presumed. This is true, even though circumstances may be shown by the libelant which shift the burden of evidence to the shoulders of respondent.

[3] The principal testimony introduced by libelant was that of the Dutch Boy's master, a waterman of evident experience, but whose testimony largely consists in assenting to the suggestive queries of counsel—a procedure "scarcely satisfactory," as was remarked in The Daniel Burns, 56 Fed. 605, 6 C. C. A. 49. By the master's evidence it appeared that his boat, drawing not over 8½ feet at the bow and perhaps 2 feet less at the stern, was moored to the bulkhead at about 10:30 a. m. The exact relation which the boat occupied to the warehouse is very uncertain; the mooring was effected by the master himself. About 12:30 he noticed a list to port; he then felt the bottom with a pike pole and found it "uneven." The tide was low by about 3:30, at which time the Dutch Boy had a 2-foot list to port, and so remained until about 5:30, with the lines to the bow tight. The boat straightened up somewhat after the tide began to rise, and at about

the hour last named her lines ceased to hold, in a manner told as follows:

"Q. When it was about half flood tide * * * some of your lines parted? A. They slid off. Q. Which lines slid off? A. They all slid off, * * * except the one that was on the dock; she jumped off the spile. Q. Your lines did not break? A. Yes, sir. Q. They did break? A. Yes, sir. Q. Which line broke first? A. They went all of a sudden; they jumped, and all went at once."

Having thus floated away from respondent's bulkhead, the tug took the lighter to another mooring place, where she arrived about 7 p. m., at which time she had still a list to port of "about an inch or an inch and a half." In this condition she remained, not leaking more than usual, so far as the evidence shows, and not listing more than above stated, until September 6th. During this interval of five days the master was much absent from his boat, owing to the sickness of his wife. No examination seems to have been made of the Dutch Boy until September 19th, when a survey was held and it was found that "there (was) no hole stove in her anywhere."

Without adverting to testimony on behalf of respondent that the berth had long been used with safety by vessels drawing even more water than the Dutch Boy, that that lighter was laden so as to be topheavy, and that the lines parted because improperly fastened for so strong a tidal current as that prevailing at Ravenswood, we are of opinion that the testimony above outlined wholly failed to establish the cause of action propounded in the libel. After reading all the evidence, it remains unproven whether the Dutch Boy suffered any damage at respondent's bulkhead, and, if she did, of what such damage consisted or why it was received.

The decree below is affirmed, with costs.