## M. & J. TRACY, Inc., v. MARKS, LISSBERGER & SON, Inc.

(Circuit Court of Appeals, Second Circuit. April 3, 1922.)

No. 233.

1. **Wharves ⬡⟹4—"Wharfinger" defined.**

   A "wharfinger" is one who keeps a wharf for the purpose of receiving goods for hire.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Wharfinger.]

2. **Wharves ⬡⟹20(3)—Duty of wharfinger to exercise reasonable care to ascertain condition of berths and give notice of obstructions.**

   The duty of a wharfinger is to exercise reasonable care in ascertaining the condition of the berths at his wharf, and to remove dangerous obstructions, or give due notice of their existence to vessels about to use the berths.

3. **Wharves ⬡⟹20(1, 7)—Libelant bound to prove negligence.**

   A wharfinger's obligation is to exercise ordinary care and diligence, and it is the duty of a libelant, suing for injuries to a vessel, to prove negligence.

4. **Wharves ⬡⟹20(2)—Wharfinger liable for concealed obstruction, which might have been ascertained by reasonable diligence.**

   If an injurious obstruction, though concealed, might have been ascertained by a wharfinger through reasonable diligence, liability for injury to a vessel exists.

5. **Wharves ⬡⟹20(3)—Duty of consignee of vessel stated.**

   The consignee of a vessel is bound to provide a safe berth, but this means no more than that he is bound to exercise diligence in ascertaining the condition of the dock and wharves, and to give notice of any obstruction or of any danger to vessels.

6. **Wharves ⬡⟹20(1, 7)—Necessary to prove negligence on part of consignee.**

   The obligation of the consignee of a vessel is to exercise ordinary care according to the circumstances, and it is necessary for one suing for injury to the vessel to prove negligence.

7. **Wharves ⬡⟹20(1)—Neither consignee nor wharfinger insures or warrants safety of vessel.**

   There is no warranty or insurance of the safety of a vessel by either a wharfinger or consignee.

8. **Wharves ⬡⟹20(1)—Consignee entitled to act on good repute of wharf.**

   A consignee of a vessel, and especially one using a wharf only occasionally, is bound to acquaint himself with its reputation and commonly known characteristics; but if he knows that a berth has a good reputation, and that it has been used for years without complaint or known accident, he is entitled to rely on such reputation.

9. **Wharves ⬡⟹20(2)—Consignee not liable for damage from boulder in berth at wharf of good repute.**

   Where a wharf at which vessels grounded at low tide was of good repute and vessels had continued to use it, and the existence of a boulder causing damage to a vessel was not only unknown to the vessel's consignee, but to the public, the consignee had a right to act on the reputation of the wharf, and was not liable for the damage.

Appeal from the District Court of the United States for the Eastern District of New York.

Libel by M. & J. Tracy, Inc., against Marks, Lissberger & Son, Inc. From a decree for libelant (269 Fed. 662), respondent appeals. Reversed and remanded, with directions.

⬡⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Libelant owns the barge Albany, which vessel, coal-laden, was consigned to respondent, and by respondent's direction moored for purposes of discharge on the south side of Steinway creek, Long Island, at the foot of a street which is a city bulkhead, or wharf, and had long been used for the unloading of vessels like the Albany. For the use of this wharf the city of New York collected wharfage. The fact is found to be that loaded vessels like the Albany, when lying at this wharf, took the ground at low tide and were expected so to do. This practice (so common in the shallow waters near New York City) had been pursued for years without injury so far as known.

While the evidence is far from clear, we are of opinion that, after resting one tide on the bottom, the Albany was found incapable of floating, and subsequent investigation in dry dock revealed a stone or "boulder" wedged in the stern between "two planks and two beams." The libel alleged that the boat had been invited by respondent to "rest on the bottom of the river, * * * where said bottom was uneven, rocky, and dangerous." There is no evidence that the bottom was generally rocky, and there is proof that it was not known to be dangerous. In this court libelant's case becomes this: That the Albany rested on this single boulder so heavily that the boulder sank into the boat, became there affixed, and was discovered at a dry dock in Jersey City, having remained in place during the operation of wrecking and transportation from Steinway creek to Jersey City.

The lower court held that the Albany's planks were broken and her sinking caused by this boulder, and further that the "accident [had occurred] through an obstruction the presence of which could have been discovered by ordinary care." Libelant had decree accordingly, and respondent appealed.

White & Case, of New York City (Allen McCarty, of New York City, of counsel), for appellant.

Geo. V. A. McCloskey and Foley & Martin, all of New York City, for appellee.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] A wharfinger is one who keeps a wharf for the purpose of receiving goods for hire, and the wharfinger in this case was the city of New York. Respondent was the consignee, who directed the Albany to lie at the city's wharf; the hire therefor going to the wharfinger. Respondent had no lease or other right of exclusive possession in respect of this public wharf.

[2-4] The duty of a wharfinger is to exercise reasonable care in ascertaining the condition of the berths at his wharf and to remove dangerous obstructions or give due notice of the existence thereof to vessels about to use the berths. Smith v. Burnett, 173 U. S. 430, 19 Sup. Ct. 442, 43 L. Ed. 756. This means that a wharfinger is bound to ordinary care and diligence in the transaction of his business, and it is the duty of a libelant to prove negligence. Stevens v. Maritime, etc., Co. (C. C. A.) 263 Fed. 68. If the injurious obstruction, though concealed, might have been ascertained by the wharfinger through the exercise of reasonable diligence, liability exists. Manhattan, etc., Co. v. Mayor, etc. (D. C.) 37 Fed. 160. And even where the obstruction is known and the notice given, so that it cannot be understood, liability continues. Schoonmaker v. New York, 167 Fed. 975, 93 C. C. A. 227.

But every such case rests upon its own facts, of which Panama R. Co. v. Napier, etc., Co., 166 U. S. 280, 17 Sup. Ct. 572, 41 L. Ed.

1004, is a striking example. It has been thought that wharves maintained by municipalities or other public authorities are subject to stricter rules than are private wharfingers (28 R. C. L. p. 44), a doctrine for which no authority can, we think, be found in the courts of the United States.

[5-7] The consignee of a vessel is "bound to provide a safe berth," as has been often said (e. g., Bowen v. Decker [D. C.] 18 Fed. 751), which phrase, however, means no more than that such consignee, while not guaranteeing the safety of the destinated wharf, "is bound to exercise diligence in ascertaining the condition of the dock and of the berths, and to give notice of any obstruction or of any danger to vessels" (Look v. Portsmouth, etc., Ry. [D. C.] 141 Fed. 182). This, also, is an obligation to exercise due care according to the circumstances, and as against a consignee it is as necessary to prove negligence as it is against a wharfinger. There is no warranty or insurance in either instance. Yet a distinction has been suggested between the standard of duty required of a wharf owner and that of a consignee. Conklin v. Staats, 161 Fed. 897 (899), 88 C. C. A. 593.

[8] The difference between the obligations of consignees and wharfingers does not rest upon any legal distinction that can be drawn between their respective "standards of duty." Both are bound to the exercise of care and diligence under the circumstances; but the means of ascertaining the existence of probable, or even possible, danger are not the same for both. In the majority of cases usually cited on this subject, the same person or corporation was at once wharfinger and consignee. In this case respondent's use of the city's wharf was an incident, as occasional an exercise of a citizen's right or privilege as is riding for hire in a city-owned omnibus or car. The duty rests upon the wharfinger to watch, maintain, and keep in order that which he asks the public to pay him for the use of. The consignee, and especially the occasional user, who is a consignee, is bound to acquaint himself with the reputation and commonly known characteristics of what the wharfinger offers for hire. But a consignee, who knows that a berth has a good reputation, that it has been used for years without complaint or known accident, is entitled to transact his business on that reputation.

[9] Applying the foregoing to the facts in this case, we may assume that there was this single boulder on an otherwise safe and soft bottom. The existence of that boulder was not only unknown to respondent, but to the public. Vessels had continued to use this berth without finding this boulder almost to the day of this accident, and the repute of the wharf was good. It was upon this habit and reputation that the consignee acted, and we think he had a right so to act. Whether the city of New York, as a wharfinger, would have been held, had it been a party to this suit, is a matter as to which we are not called upon to express any opinion.

Decree reversed, with costs, and the cause remanded, with directions to dismiss the libel, also with costs.