**BERWIND WHITE COAL MINING CO. v. CITY OF NEW YORK et al.**

**No. 206.**

Circuit Court of Appeals, Second Circuit.
March 9, 1931.

Macklin, Brown, Lenahan & Speer, of New York City (Horace L. Cheyney, of New York City, of counsel), for appellant.

Arthur J. W. Hilly, Corp. Counsel, of New York City (William J. Leonard and Matthew J. Troy, both of New York City, of counsel), for appellee City of New York.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Robert S. Erskine and Henry P. Elliott, both of New York City, of counsel), for appellee Transatlantica Italiana.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The libelant, owner of the coal barge Eureka No. 5, was requested by respondent Transatlantica Italiana to deliver a bargeload of bunker coal to its steamship Guiseppe Verdi, which was lying on the north side of Pier 75, North River, Borough of Manhattan. Libellant accordingly ordered its tug Admiral Dewey to tow the barge to the place. This was done on April 30, 1926, and the barge was moored astern of the Guiseppe Verdi to wait until some of the libellant's other coal barges were unloaded, before discharging her cargo on the steamer. Libellant had no particular knowledge of the condition of the pier, though it had previously at times had its barges towed there to steamers of the French Line. The Eureka No. 5 was moored in the slip astern of the Guiseppe Verdi and bow-in. She was in good condition when the bargee left her for the night. The next morning she was found settled on the bottom of the slip. The bottom of the barge was penetrated by an oak pile which was sticking through her planking on the starboard side. The portion of the pile which was fast in the barge had apparently broken from the end of one of the fender piles of the pier. It was about two feet in length and from 12 to 14 inches in diameter. The remainder of the pile was something like 24 feet long and was still sticking in the mud of the slip when discovered. The end of the pile had evidently been under water and the barge had settled upon it with the ebb of the tide.

The respondent Transatlantica Italiana had a permit from the City of New York (the owner of the premises) to use the pier for April 30, and had leased it for a term beginning May 1. There was some testimony that the break in the piece of the pile found embedded in the barge was new, but this evidence was of slight weight, as bearing upon the length of time during which the pile had been a hidden danger to navigation. The witness admitted that the pile was covered with mud and even an old pile might show new timber in its cross section when broken off.

A wharfinger, though not an insurer, is bound to exercise reasonable diligence to ascertain the condition of berths at which it invites vessels to moor. Smith v. Burnett, 173 U. S. 430, 19 S. Ct. 442, 43 L. Ed. 756; M. & J. Tracy v. Marks Lissberger & Son (C. C. A.) 283 F. 100; The Eastchester (C. C. A.) 20 F.(2d) 357. While it is true that the libelant can only recover damages by proving that the owner of the pier was negligent, and that the latter can only be found negligent if it knew, or ought to have known, the condition of the pier at the time it permitted its use, yet the pile had been part of the fender used to protect the pier from vessels in the slip. The owner had control of the premises and was presumptively in a position to say when the waters adjacent to the pier became dangerous from hidden obstructions. It had no excuse for not knowing when a fender pile broke off so that its end lay under water, a danger to vessels com-

ing into the slip. If the broken pile had not been there long enough to import notice, the wharfinger ought to have offered proof to show when it had last inspected the waters of the slip and what condition it then found. The existence of the broken pile at the time the barge was injured is evidence of an earlier defective condition. Best, J., in Regina v. Burdett, 4 B. & Ald. 124, said:

"I am to presume a thing always in the state in which it is found, unless I have evidence that in some previous time it was in a different state."

Such is the general inference, the strength of which is dependent upon the particular circumstances of the case and the likelihood of the duration in the past of a state of facts found to be existing at present. Wigmore on Evidence, § 437; Wilmot Engineering Co. v. Charles Blanchard, 208 App. Div. at page 221, 203 N. Y. S. 700; Crowell Bros. v. Panhandle Grain & Elevator Co. (C. C. A.) 271 F. 129; Gaulden v. Lawrence, 33 Ga. 159; Phipps v. Consolidated Flour Mills Co., 113 Kan. 118, 213 P. 637.

In the absence of evidence to the contrary, it is a reasonable inference that the broken pile on which the barge settled had remained in situ for a considerable time prior to the accident. If such was the case, the city of New York ought to have discovered an obstruction so dangerous to vessels coming to its pier.

The steamship company, however, was in a different situation from the city of New York. It had just begun to occupy the premises and had no opportunity to become familiar with hidden obstructions to navigation existing prior to its occupancy, nor had it reason to suppose they existed where the slip was one in common use. Berwind-White Coal Mining Co. v. Bush Terminal Co. (C. C. A.) 296 F. 475; M. & J. Tracy v. Marks Lissberger & Son (C. C. A.) 283 F. 100. Nothing but actual notice could give rise to liability on its part, and of such notice there is no proof.

The city of New York on the other hand was in a position to become aware of the breaking down of the piling and of the consequent dangerous condition of the slip. Its failure to discover such a hidden obstruction to navigation existing in its own slip and to repair the premises or to give warning to the vessels coming there was negligence, for which it alone is liable.

The decree is modified so as to hold the city of New York liable for the damage to libelant's barge, and is otherwise affirmed.