RICHMOND SAND & GRAVEL CORPORA-
TION v. TIDEWATER CONST. COR-
PORATION et al.

No. 5771.

United States Court of Appeals
Fourth Circuit.

Nov. 8, 1948.

John W. Oast, Jr., of Norfolk, Va., for
Richmond Sand & Gravel Corporation.

John T. Casey, of Washington, D. C.,
Atty. Department of Justice (H. G. Mori-
son, Asst. Atty. Gen., George R. Humrick-
house, U. S. Atty., of Richmond, Va., and

J. Frank Staley, Sp. Asst. to the Atty. Gen., on the brief), for Tidewater Construction Corporation.

Roy L. Sykes and R. Arthur Jett, both of Norfolk, Va., for Connecticut Fire Ins. Co.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

These libels in admiralty arose out of the capsizing of the scow Janet McGeeney. The parties concerned in the appeals are the Richmond Sand and Gravel Corporation (hereinafter referred to as Richmond), the Tidewater Construction Corporation (hereinafter referred to as Tidewater) and the Connecticut Fire Insurance Company (hereinafter referred to as Connecticut).

On October 14, 1942, Richmond, per the tug Fisher No. 13, delivered its scow Janet McGeeney, loaded with 533.19 tons of gravel or grits, to Tidewater, at a wharf about 1,000 feet north of Tidewater's job site. At about 4:30 P.M. on October 15, Tidewater's tug Mars shifted the McGeeney to a berth at the job site alongside Tidewater's Derrick Rig No. 12, where unloadings operations from the McGeeney were begun, and before quitting time approximately forty tons of grits were unloaded. The scow was periodically inspected by Tidewater's night watchman and found to be floating without increasing her list and without any appreciable water in her hold until she was boarded during the darkness of the early morning of October 16, when she was found to be leaking rapidly. Despite all efforts to save her, she capsized, her deck riding over and sinking the Rig No. 12 to which she was still moored.

Richmond libelled the tug Fisher No. 13, and her owner, and Tidewater for the damages to the McGeeney. Connecticut intervened and cross-libelled Richmond and the tug Fisher No. 13, and owner, for the sum of $7,680.86, the amount it had paid to Tidewater as insurer of Tidewater's Rig No. 12, sunk by the capsizing of the McGeeney. The suits were consolidated and tried together. The District Judge exonerated the tug Fisher No. 13, and owner, from all liability and no appeal has been taken from this action. He found that the capsizing of the McGeeney resulted from her own unseaworthy condition and dismissed Richmond's libel of Tidewater; and Richmond appeals. In Connecticut's cross-libel of Richmond, the District Judge found that the sinking of Rig No. 12 had been caused by the joint negligence of Richmond and Tidewater and, pursuant to the admiralty rule for division of damages, awarded Connecticut, as subrogee of Tidewater, the sum of $3,840.43, that being one-half of the amount Connecticut had paid to its insured, Tidewater. Both Connecticut and Richmond appeal from this portion of the judgment.

In its libel for the damages to the McGeeney, Richmond relies upon the familiar rule in the law of bailments that a prima facie presumption of negligence on the part of the bailee arises from the bailor's proof that the bailed article was delivered in good condition and was returned damaged, or not returned at all. Seaboard Sand & Gravel Corporation v. Elmhurst Contracting Co., 2 Cir., 159 F.2d 860; The C. W. Crane, 2 Cir., 155 F.2d 940. Applying this principle, Richmond asserts that it is entitled to a verdict since it has proved that the McGeeney was in seaworthy state when delivered and that Tidewater has failed to explain how the disaster occurred. It is necessary that we consider briefly the effect of this presumption.

The presumption does not—as suggested by Richmond—cast upon the bailee the ultimate burden of proving how the damage occurred. Thompson v. Chance Marine Const. Co., 4 Cir., 45 F.2d 584; Cummings v. Pennsylvania R. Co., 2 Cir., 45 F.2d 152. It is a rebuttable presumption whose sole effect is to shift to the bailee the burden of proceeding with the evidence. Commercial Molasses Corporation v. New York Tank Barge Corporation, 314 U.S. 104, 111, 62 S.Ct. 156, 86 L.Ed. 89; Alpine Forwarding Co. v. Pennsylvania R. Co., 2 Cir., 60 F.2d 734, certiorari denied 287 U.S. 647, 53 S.Ct. 93, 77 L.Ed. 559. There are, in general, two ways in which the bailee may rebut the presumption. He may show either how the disaster in fact occurred and that this was in no way attributable to his negligence, or that

he exercised the requisite care in all that he did with respect to the bailed article so that, regardless of how the accident in fact transpired, it could not have been caused by any negligence on his part. The Dupont, D.C. 14 F.Supp. 193; see Bank v. Chas. Kurz Co., D.C., 69 F.Supp. 1017, 1018. The presumption is not evidence for the consideration of the jury, see Alpine Forwarding Co. v. Pennsylvania R. R., supra, 60 F.2d at page 736, and once rebutted in either of these fashions, disappears from the case. Waldie v. Steers Sand & Gravel Corporation, 2 Cir., 151 F.2d 129. It is thus solely a procedural device and does not in any way affect the ultimate burden of proving the bailee's negligence, which burden remains throughout with the plaintiff-bailor. Commercial Molasses Corporation v. New York Tank Barge Corporation, supra; Seaboard Sand & Gravel Corporation v. American Stevedore, 2 Cir., 151 F.2d 846; The Dupont, supra.

■ Tidewater has shown itself free of any negligence which might have caused the damage to the McGeeney. The evidence proved conclusively that Tidewater's employees made frequent inspections of the McGeeney from the time she came into its possession until the leakage was discovered on the morning of the sixteenth. Tidewater produced as a witness a deckhand who was aboard its tug Mars when that tug moved the McGeeney from the dock where she was originally moored to the berth alongside Rig No. 12 where she finally capsized. This witness testified— and the Trial Judge expressly found—that no damage was done to the McGeeney during this shifting of berths and that this movement was "properly and safely" made. Tidewater introduced also the operator of Rig No. 12 who partially unloaded the McGeeney on the afternoon of the fifteenth. He testified as to the method of unloading and the Trial Judge found that this method was "reasonable and proper." Finally, the Judge found, generally, that "no act or omission of * * * the Tidewater Construction Corporation at any time contributed to the unseaworthy condition of said scow." Each of these several findings is amply supported by the evidence.

■ The bailee's position is further strengthened in cases such as this where the damage to the bailed article is such as might have resulted from a latent defect in the article itself rather than from the application of outside forces. In this situation, the bailee's proof that he exercised due care in all that he did with respect to the bailed article not only serves to rebut the presumption of negligence on his part but also tends to destroy the bailor's initial proof that the article was delivered in good condition. The Irving, 16 F.Supp. 22, 26, affirmed Conners Marine Co. v. Manhatten Lighterage Co., 2 Cir., 91 F.2d 1011. That is precisely what occurred in this case. After hearing all the evidence, the Trial Judge concluded that the capsizing of the McGeeney "was due solely to her unseaworthiness." This finding, which we think is amply supported by the evidence, along with the finding that no act or omission of Tidewater contributed to the unseaworthy condition of the scow, necessarily implies that, although floating and in apparently good condition when delivered to Tidewater, the scow was at that time actually unseaworthy. Having failed to prove any specific act of negligence by Tidewater, Richmond must have its libel for the damages to the McGeeney dismissed. This portion of the judgment below is affirmed.

We cannot agree, however, with the result reached in Connecticut's cross-libel of Richmond for the damages caused by the sinking of Derrick Rig No. 12. The court below held Tidewater negligent in two respects which contributed to the sinking of the rig: first, in mooring the listing scow with the low side next to the rig and, second, in failing to remove the scow from alongside the rig after it was found that she was leaking and that the pump then in use would not handle the leakage.

When the McGeeney was delivered to Tidewater she had a list to starboard of from one to one and one-half feet. However, witnesses introduced by both sides agreed unanimously that such a list on scows of this class was in no way unusual. There was thus in the fact of the list nothing which should have put Tidewater on notice of any danger to the scow. Nor

was there any testimony to the effect that it was customary to take the precaution of mooring listing scows with the low side away from adjoining vessels. There is nothing in the record to support a finding that Tidewater was under a duty to in any way consider the list in determining how the scow should be moored to the Rig No. 12.

The evidence is rather incomplete with respect to just what action was taken by Tidewater from the time the McGeeney was found to be leaking until she capsized and, more particularly, as to the exact chronology of events. As nearly as can be ascertained from the record, the leakage was discovered about four A.M. on the sixteenth. A two-inch centrifugal pump driven by a gasoline engine was placed aboard the scow in full operation before four-fifteen A.M. and was still operating when the scow capsized. A Mr. Norris, Tidewater's Project Manager who had been summoned, arrived upon the scene about four-thirty A.M. By then it had become obvious that the single pump was unable to handle the leakage and efforts were made to obtain a second pump. However, before another pump could be procured and put into operation, Norris concluded that the scow could not be saved, that the list had become so severe that it was dangerous to board her, and ordered the men off the scow. An attempt was made to set her adrift and a few of the lines to the rig were, in fact, cast off. Other of these lines, though, were steel and, having become taut due to the sinking of the scow, could be neither cut nor loosened. Roughly an hour and a half after the first pump was started the scow capsized, sinking the rig.

Returning to the record to point out a few of the material deficiencies, we note that there is no conclusive evidence as to the exact time the leakage was discovered, the rate of leakage or its apparent source. There is no evidence as to when it was concluded, or should have been concluded, that the rate of leakage exceeded the pump capacity, or the amount of that excess, or as to the location of the second pump which was procured too late to be put into operation. These facts would all bear on the reasonableness of Tidewater's attempt to handle the leakage with pumps. There is no showing at what point of time it should have been known that the scow could not be saved and should be cast off, or that the attempt to cast off was not made within this time.

■ From the record in this state it is difficult to tell precisely what action Tidewater's employees should have taken, whether or not the action they did take was reasonable under the circumstances, and whether the damage to the rig could have been avoided even had they pursued the best course open to them. In this connection it must be remembered that the McGeeney capsized during the early morning hours between four and six A.M., when there was only a skeleton force of two watchmen at the job site. Any questions of Tidewater's negligence must be resolved in the light of the circumstances then existing. It is not required that parties in emergency situations choose what in retrospect appears to have been the best possible course of action. The Mary T. Tracy, D.C., 298 F. 528, reversed on other grounds, 2 Cir., 8 F.2d 591, 593; The Lafayette, D.C., 269 F. 917. It is here sufficient if Tidewater's employees acted in the exercise of their best judgment and if the course they pursued was reasonable under the circumstances confronting them. Mere errors in judgment in this situation—if in fact any existed—would not constitute actionable negligence. The Bellatrix, 3 Cir., 114 F.2d 1004, 1941 A.M.C. 149.

■ The evidence does not support a finding that Tidewater was negligent in any way which contributed to the sinking of its Rig No. 12. It must be concluded that the damage to the rig was caused solely by Richmond's breach of its contractual duty to deliver a seaworthy scow. This portion of the judgment below is, accordingly, reversed and final judgment will be entered in favor of Connecticut for the full amount of its payment to Tidewater occasioned by the damage to Rig No. 12, i. e., $7,680.86, with interest and costs.

Affirmed in part.

Reversed in part.