CHARLES PFIZER & CO., Inc. v. CON-NERS MARINE CO., Inc., et al.

THE MARY M.

THE MARGARET M.

No. 252, Docket 21313.

United States Court of Appeals
Second Circuit.

Argued May 9, 1949.

Decided June 8, 1949.

Bigham, Englar, Jones & Houston, New York City (Henry N. Longley and F. Herbert Prem, New York City, of counsel), for plaintiff.

Purdy, Lamb & Catoggio, New York City (Edmund F. Lamb, New York City, of counsel), for claimant.

Before CHASE, CLARK, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal in admiralty taken by the libellant from a final decree of the United States District Court for the Southern District of New York dismissing the libel.

Libellant, owner of a quantity of molasses at Buffalo, New York, entered into a contract for the transportation of this molasses by respondent from Buffalo to New York City. This contract was one of private carriage.

The molasses was loaded upon the "Jean Sarazen," the "Brewer," the "Margaret M.," and the "Mary M.," four tank barges belonging to respondent, and these barges, in tandem tow of the tug "Gramercy," started upon the voyage. All went well until the flotilla reached Haverstraw, on the Hudson River, at about 5 P. M. on October 27, 1944. The tug captain, thinking navigation through the Tappan Zee inadvisable owing to unfavorable conditions of wind and weather, tied up the flotilla to a dolphin. But, around Midnight, the wind and waves had moderated somewhat so the voyage to New York City was resumed.

When the flotilla left Buffalo, each of the four barges was manned by a barge captain. At Troy, however, the barge captain of the stern barge, the "Mary M.," left the flotilla, with an understanding that his wages were to be divided among the captains of the three other barges, including the captain of the barge "Sarazen," who was also flotilla captain. It seems that the captain of the tug "Gramercy" was not familiar with this arrangement. Accordingly, when the flotilla left Haverstraw, the heavily laden stern barge, the "Mary M.," was unmanned.

As the flotilla proceeded down the Hudson River, the wind freshened and about 7 A. M., October 28, the barges began to bump together. The space between the barges was increased from about 2 feet to between 4 feet and 5 feet by paying out the lines between the barges but no further effort seems to have been made to increase the distance between the barges.

Around 8 A. M., the lines parted between the "Sarazen" (the leading barge) and the second barge, the "Brewer." The tug "Gramercy," with the "Sarazen," proceeded to Yonkers, leaving the three other barges adrift, with the "Mary M." unmanned. Then, after mooring the "Sarazen," the tug returned to pick up the other three barges.

While the tug was absent from the flotilla, the port lug line between the "Margaret M." and the "Mary M." parted. The "Mary M." then swung around on her starboard lug line and her starboard side brought up against the starboard side of the Margaret M." For a period of time the two barges pounded each other. Then the "Mary M.'s" starboard side overrode the starboard side of the "Margaret M." This caused the "Margaret M." to list heavily to starboard, her starboard rail was submerged, the viscous molasses in her tanks crept to starboard and the barge capsized. In overturning, the "Margaret M." struck the "Mary M.," thus damaging the "Mary M." and causing the loss of some of the molasses on the "Mary M." The cargo of molasses on the "Margaret M." was a total loss.

The District Judge filed no opinion. In a very brief memorandum decision, he stated: "I do not think libellant has established either unseaworthiness or negligence proximately causing the loss." He filed findings of fact (six in number), which omitted any reference to the absence of the bargee from the "Mary M.," and three conclusions of law. These findings and conclusions were prepared by proctors for respondent.

■ We cannot overturn the finding of the District Judge that the barges "Margaret M." and "Mary M." were seaworthy. There was testimony to the contrary by libellant's surveyor, Bagger, who examined the barge "Margaret M." in dry dock, after the accident; while respondent's surveyor, Wilkie, also the witness Haug, gave evidence that the barge was seaworthy. The resolution of such evidential conflicts is primarily the function of the District Judge and we cannot say here that his finding of seaworthiness is clearly erroneous.

■ Nor are we concerned here chiefly with questions of presumptions, burden of proof and the duty of going forward with the evidence. These are discussed at some length in the well known case of Commercial Molasses Corporation v. New York Tank Barge Corporation, 2 Cir., 114 F.2d 248, 251, affirmed 314 U.S. 104, 62 S.Ct. 156, 86 L.Ed. 89. And, in the light of that case, these were treated (by the writer of this opinion) in Richmond Sand & Gravel Corporation v. Tidewater Construction Corporation, 4 Cir., 170 F.2d 392. We prefer to rest our decision, reversing the decree below, upon the basis that the preponderance of the evidence here (coming practically all from employees of respondent) and the whole picture viewed in its entirety, lead clearly to the conclusion that the respondent was guilty of negligence which caused libellant's loss. We discuss briefly what appear to us as the more salient features in the picture which occasion our decision.

High up on this list is the absence, at the time of the accident, of a bargee on the "Mary M.," the rear barge in the flotilla. There was evidence that in a tow of this kind, it is customary to have a bargee on each loaded barge, while the witness Hamilton (whose experience in towing barges on the Hudson River was quite extensive) gave as his opinion: "Each scow or each boat should have had a captain." And here there was a bargee on the "Mary M." when the flotilla left Buffalo. There was further testimony (by more than one witness) of the normal duties of a bargee as to his barge, such as watching the lines and paying them out when occasion demands, sounding the barge, seeing that the barge follows properly the barge ahead, reporting any situations offering peril to the barge and generally guarding the barge from harm. The "Mary M.," too, was the last barge in a tow, loaded with molasses in tanks. Obviously, there was much here that might have been done to avert the accident (but which was not done and could not have

been done) had there been a bargee on the "Mary M."

A not unimportant fact here is the parting of not one but two tow ropes between the barges—first the rope between the "Sarazen" and the "Brewer," then the rope between the "Margaret M." and the "Mary M." We note, too, the failure to pay out further these ropes, which would have eased the strain on the ropes and might have prevented their parting.

Open to question at least was the conduct here of the captain of the tug "Gramercy." He started from Haverstraw before dawn in October through the Tappan Zee with adverse weather conditions—a northerly wind and an incoming tide. And, apparently, he neither secured, nor even adequately attempted to secure, reports or indications of the probable situations of wind, wave or weather that he might have to face. We note, too, when the rope broke between the barges "Sarazen" and "Brewer," his decision to leave the scene, with the loaded barges adrift. Captains of tugs are not required to be either wizards or prophets yet it might well be asked whether under the circumstances here attendant, something at least similar to what actually happened did or did not belong in the realm of the probable or the expected.

The bargee of the "Brewer," stationing himself at the stern of his barge with a large timber, was able to ward off the "Margaret M." when she began to ride up on her line. There is no evidence that the bargee of the "Margaret M." took similar, or any effective, action to ward off the "Mary M." On the "Mary M." there was no one to take any action whatever.

The cargo here was molasses stored in deck tanks on the barges. When a barge listed, the molasses would creep slowly toward the side of the list; but when, after a list, the barge began to right itself, this thick, viscous liquid (unlike a lighter, thinner liquid) did not quickly flow back to help in the righting of the barge. Here, at least, was an added and foreseeable hazard.

Accordingly, the decree of the District Court is reversed and the case is remanded to that Court with instructions to enter a decree in favor of the libellant and for such further action as such a decree might prompt.

Reversed.