MEYERS *et al.. v.* THE AMERICA and THE NILE.

*(District Court, D. Connecticut.* March 23, 1889.)

SHIPPING—LIABILITY. FOR TORT.

> While the libelants' vessel, B., was tied up at a wharf, the N., a much larger vessel, was made fast to the wharf, close to and outside of the B., where the water was of such depth that the N. was certain to ground with low tide. *Held* that, the N. having grounded and listed over towards the wharf, her owners were liable for damages resulting to the B. from being caught between the N. and the wharf, and held until the rising tide covered her.

In Admiralty.

*Carpenter & Mosher,* for libelants.

*Samuel Park,* for claimants.

SHIPMAN, J. This is a libel *in rem* to recover damages for the alleged negligence of the America and her tow, the Nile, whereby the Nile, when grounded upon a falling tide, listed over upon the R. W. Burrows, which was lying at the wharf, and the latter was jammed and held fast between the Nile and the wharf until the rising tide covered and sank her. For eight or ten days prior to May 21, 1887, and for two summer seasons before 1887, the tug-boat R. W. Burrows had been engaged in towing mud-scows on the Pawtucket and Providence rivers, and was in the habit of laying up at night at the coal-wharves of the Boston & Providence Railroad Company, at a place known as "India Point," near Providence. Her officers or owners had not obtained permission to tie there, and paid no wharfage for the privilege, but the watchman of the railroad company knew that such was her habit, and made no objection. The agent of the company in charge of the wharves knew that the river tugs, whose captains lived in East Providence, were, wont to tie up there without permission, and without objection. About 7 o'clock on Saturday evening, May 21, 1887, the said tug made fast to one of said wharves, at one of the five places thereat for discharging coal. Immediately after, the tug America towed the barge Nile, loaded with 408 tons of egg coal, which was owned by and consigned to the said railroad company, to another of its wharves at that point, and the latter was partially made fast. As the America had blown her whistle to attract the attention of the consignees, a person appeared at this time, whom I believe to be the watchman, and who said he was in authority, but who was not intrusted with authority in regard to the berths of vessels, and directed the captain of the America to place the Nile at the wharf where the Burrows was, or along-side of the Burrows, and said that her coal was to be discharged at the place where the Burrows lay. In fact the coal was not to be, and was not, discharged at that point. Coal is not unloaded at those wharves at night, or between Saturday night and Monday morning. The Burrows' captain and pilot saw the America and the Nile come up, and waited to see where the tow was to be placed, thinking that she might be ordered under the spot which the Burrows occupied; but, seeing that

preparations were being made to make fast the tow, they left their own vessel, and went to Providence. No one directed the Burrows to leave her position. The America towed the Nile outside of, and she was hauled in close to, the Burrows; two fenders were placed between the vessels, and the Nile was made fast to the wharf. There was room for her at the wharf astern of the Burrows. Where she lay the water was 18 feet deep at high tide, and 12½ feet deep at low tide. It was high water about 7 o'clock that evening. The Burrows drew about 6½ feet. The Nile commenced to touch bottom about 9 o'clock. All the persons on board the Burrows left her after she was made fast. Her captain and pilot returned about 10 o'clock, and found her fast and immovable between the Nile and the spiles of the wharf. No assistance could be obtained at that time to haul her out. She was not leaking, and, though thinking she was in some danger, they went to bed, and were awakened about 1 o'clock by the waters coming over the deck. The tug sank, and was raised some days thereafter in a damaged condition. The Nile had listed over somewhat upon the Burrows, and the Burrows had a little list towards the wharf. The deck of the Nile, which had been a bark, was at least 12 inches higher than the Burrows' deck. The officers of the America and of the Nile knew the depth of the water, and that the Nile would ground. She was negligently placed dangerously near the Burrows, and so near that, when grounding took place, there was a probability of jamming the smaller and inside vessel against the wharf. If the order was given to place the Nile along-side the Burrows, the America was not ordered to place the Nile in such close proximity to the Burrows as to endanger the latter's safety. It is evident that while the crew of the Burrows, between 10 and 11 o'clock, apprehended danger, they hoped that no harm would ensue, and therefore the testimony in regard to the cause of the accident is not very full, but it is tolerably clear that, after the larger, longer, and heavily laden vessel took the ground, she listed somewhat, and squeezed the tug between herself and the spiles of the wharf, and held her tight, and when the tide rose the Burrows could not float, and was covered and filled with water, and that the injury happened through the carelessness and negligence of those in charge of the America and the Nile.

The law on the foregoing facts is stated in *Vantine* v. *The Lake*, 2 Wall. Jr. 52; *The Indian* v. *The Jessie*, 2 Marit. Law Cas. 217; and *The Lidskjalf*, Swab. 117. The facts in each of these cases were very similar to those of the present case. The law is stated in *The Lidskjalf*, as follows:

"When a vessel is lying on the shore, and another vessel is placed voluntarily by her owners, or those who are acting in their behalf, in such a position that damage will happen if some event arises which it is not possible to control, the owners of the second vessel must be responsible for the damage."

This must be especially true when the event which arises is one which ought naturally to be anticipated and to be guarded against. In this case it was certain that the Nile would ground. It was reasonable to expect, that she would list somewhat; and, if she listed towards the wharf,

her proximity to the Burrows and her superiority in size were such that the latter would be necessarily squeezed against the wharf, and damage would ensue. Let there be a decree of reference to a commissioner to ascertain the amount of damage.