## THE STAMFORD. THE CHICAGO. THE AMBROSE NO. 310.

District Court, S. D. New York.   July 31, 1928.

On Reargument, July 10, 1929.

Macklin, Brown, Lenahan & Speer and J. Dudley Eggleston, all of New York City, for libelant, the Chicago, and McLain Transportation Line.

Duncan & Mount, of New York City, for Stamford and Red Star Towing & Transportation Co., Inc.

William F. Purdy, of New York City, for Ambrose Lighterage & Transportation Company, Inc.

GODDARD, District Judge.   These two suits were tried together upon stipulation of counsel.   The one is a suit by the B. McLain Transportation Line, Inc., owner of the coal barge Chicago, against the steam tug Stamford and Red Star Towing & Transportation Company, Inc., her owner, to recover for injuries to the Chicago, alleged to have been sustained by her when she grounded, in which T. W. Brockman, the consignee, has been impleaded.   The other suit is by the Ambrose Lighterage & Transportation Company, Inc., the owner of barge Ambrose No. 310, against the barge Chicago and her owner, the B. McLain Transportation Line, Inc., to recover for injuries alleged to have been sustained by the Ambrose as the result of the Chicago coming in contact with her.   In this suit, the Stamford and her owner, the Red Star

Towing & Transportation Company, Inc., and also T. W. Brockman, the consignee, have been impleaded.

On August 11, 1926, the tug Stamford left Whitestone, Long Island, with coal barge Chicago and the covered barge Ambrose No. 310 in tow for Eastchester creek, Mt. Vernon. The Chicago, with a cargo of 428 tons of coal, was consigned to Brockman at Garrafino's dock, Eastchester creek. She was 110 feet long, 27 feet beam, with a cargo capacity of 800 tons of coal. With her cargo of coal she drew 8½ feet of water. The testimony is that she had been engaged continually before this grounding in carrying coal and was then in good condition, and that after the repairs, made necessary by that event, were completed, she resumed carrying coal.

The Ambrose No. 310 was a covered barge 98 feet long 32 feet wide. Eastchester creek is a small creek, which runs in from the Sound and was variously estimated to be from 75 feet to 90 feet wide at high tide from shore to shore. At low tide there is only a channel about one-third the width of the creek running through the center, which has a depth varying from 1½ feet to 4½ feet or so, and on either side of the channel there is little, if any, water. When the Stamford and her tow reached the vicinity of Garrafino's dock, her captain saw that the only berth there was occupied by another boat, which was being discharged; so he reported to Brockman and inquired from him whether he should remove the boat then there and put the Chicago in that berth, and was directed by Brockman not to do this, but to place the Chicago alongside of the Ambrose at Hutchinson's dock, which was the one just before Garrafino's dock. Brockman came aboard the Chicago and watched the lines of the Chicago being made fast to the Ambrose, and another line to a boat which lay below her.

The captain of the Stamford testified that he had frequently taken boats into Eastchester creek, and that the berth at Garrafino's dock was a good one, and that on occasions he had left two boats abreast at Hutchinson's dock; that shortly after making the Chicago fast he left the creek; that he had said nothing to the captain of the Chicago about the condition of the bottom of the creek.

The following morning, or the one after that—it is impossible to say with certainty which as the testimony is so conflicting and confused—the Chicago had become so strained and her butts twisted from ground-

ing, that she filled with water and sunk. She had grounded in such a manner that she was hung up at both ends, with no support for her amidships for a distance of some 30 feet.

As soon as two gas engine pumps could be secured, her seams were temporarily caulked; she was pumped out and taken up to Garrafino's dock and discharged. The Ambrose, which had also grounded, took an offshore list, and the Chicago had an inshore list, and they rested against each other, with the rail of the Chicago under that of the Ambrose.

There is testimony by the captain of the Stamford, and also by the captain of the Ambrose, that the Chicago had been moved from the position in which she had been placed by the Stamford; but the captain of the Stamford said that she had been moved further back from Garrafino's dock, and the captain of the Ambrose stated she had been moved forward. The captain of the Chicago denied that his boat had been moved from the position in which she had been placed by the Stamford, and I am inclined to accept his statement as correct, and to conclude that the only movement she made was with the swing of the tide. Certainly, it seems unlikely that she would have moved further away from Garrafino's dock, as the captain of the Stamford says.

The combined width of the Ambrose and the Chicago is about 60 feet, so that it is quite obvious that even if the Ambrose was snug up against Hutchinson's dock and the Chicago lay close alongside of her, the Chicago would be partly over the channel and partly over the bank, and being in such a position that at low tide she would rest on an uneven bottom, and this would be likely to strain her, with a cargo of 428 tons of coal aboard.

■■ The situation here presented is quite similar to that in The Eastchester, 20 F.(2d) 357, 359, recently decided by the Circuit Court of Appeals for this Circuit, and under that authority the liability for the injury sustained by the Chicago and by the Ambrose is upon the consignee, Brockman, he having accepted delivery of the Chicago in the berth adjacent to the berth where he was to discharge her. It was a safe berth at the time she was left, and it was his duty to shift her if she was not to be discharged before low tide, or at least to warn the captain of the barge of the conditions.

Under the special circumstances here existing, the captain of the Chicago was not negligent in failing to take soundings. In

the Eastchester Case, supra, the court stated: "Having been placed in this berth by the tug and the consignee, we think the bargee was justified in assuming the berth to be safe and making no investigation for himself."

The consignee himself accepted the barge, and directed where she should be placed, and let her remain there in a situation which he must have known would be likely to result in her being injured at low tide. He took this risk, and must, since injury has been sustained, respond to the owners in damages. See, also, W. H. Baldwin (C. C. A.) 271 F. 411; C. F. Harms Co. v. Upper Hudson Stone Co. (C. C. A.) 234 F. 859; Jova Brick Works v. City of New York (C. C. A.) 277 F. 180.

Accordingly the libel of B. McLain Transportation Line, Inc., barge Chicago, against the steam tug Stamford and Red Star Towing & Transportation Company, claimant, is dismissed, and the libelant in that suit may have a decree against T. W. Brockman, respondent impleaded; and the libel of the Ambrose Lighterage & Transportation Company, Inc., and Ambrose No. 310, against the barge Chicago and B. McLain Transportation Line, Inc., claimants, and against the steam tug Stamford and Red Star Towing & Transportation Company, respondent, is dismissed, and the libelant in that suit may have a decree against T. W. Brockman, respondent impleaded, with the usual references as to damages.

### On Reargument.

Upon a reargument, counsel for the Ambrose Lighterage & Transportation Company, Inc., has asked for a decree (none as yet having been entered) providing that T. W. Brockman, respondent impleaded, be held primarily liable, and the barge Chicago secondarily liable, as there is some question as to Brockman's financial responsibility.

The proximate cause of the injury to the barge Ambrose No. 310 was the placing of the Chicago in such a position that with the fall of the tide she came in contact with the Ambrose, which had been left properly moored to the dock. The consignee, Brockman, had directed the placing of the Chicago in this position, and was in lawful possession of her at the time, so that it follows that the Chicago is liable in rem for the injury she caused to the Ambrose.

"The law in this country is well settled that the ship itself is to be treated in" the same "sense as the principal and becomes liable for the negligence of any one who is lawfully in possession of her, whether as owner or charterer." Turner v. United States, 27 F.(2d) 134, at page 136 (C. C. A. Second Circuit). See, also, Vantine v. The Lake, Fed. Cas. No. 16,878; The John G. Stevens, 170 U. S. 114, 18 S. Ct. 544, 42 L. Ed. 969; The Anaces (C. C. A.) 93 F. 240; Meyers et al. v. The America (D. C.) 38 F. 256.

The case at bar is distinguishable from The Chancellor (C. C. A.) 30 F.(2d) 227, 1929 A. M. C. 249, for in that case the damage was occasioned by the negligence of a stranger, who was not in possession of the barge, and there was no fault on the part of those in charge of The Chancellor.

Accordingly, a decree may be entered providing for the dismissal of the libel of the B. McLain Transportation Line, Inc., barge Chicago, against the steam tug Stamford and Red Star Towing & Transportation Company, claimant, and the libelant in that suit may have a decree against T. W. Brockman, respondent impleaded, and the libel of the Ambrose Lighterage & Transportation Company, Inc., barge Ambrose No. 310, against the barge Chicago, the B. McLain Transportation Line, Inc., claimants, and against the Steam tug Stamford and Red Star Towing & Transportation Company, Inc., respondents, is dismissed as to the B. McLain Transportation Line, Inc., the steam tug Stamford, and Red Star Towing & Transportation Company, Inc., and the libelant in that suit may have a decree against T. W. Brockman, respondent impleaded, holding Brockman primarily liable, and the barge Chicago secondarily liable, with the usual reference as to damages.