294 F.2d 272
 Petition of Estelle RICE et al., co-partners, doing business under the firm name and style of Jacob Rice & Sons, as owners of THE scow JOAN R., in a cause of limitation of and/or exoneration from liability, Petitioner-Appellant.
Estelle RICE, Emily Rice, Mathilde Rice, Helen Rice, Margaret Rice, Frank V. Rice, Edward E. Rice, Estate of William R. Rice, John G. Rice, Maurice J. Rice, Adrian L. Rice, and Delores R. Shader, co-partners doing business under the firm name and style of Jacob Rice & Sons, as owners of THE scow JOAN R., Libellant-Appellee,
v.
NEW YORK TRAP ROCK CORPORATION, Respondent-Appellant,
v.
RED STAR TOWING & TRANSPORTATION COMPANY and Colonial Sand & Stone Co., Inc., Respondent-Impleaded-Appellees.
 No. 377.
 No. 378.
 Docket 26110.
 Docket 26111.
 United States Court of Appeals Second Circuit.
 Argued May 3, 1961.
 Decided September 19, 1961.
 
 Charles J. Carroll, Jr., New York City (Leo F. Hanan, Maurice F. Beshlian, New York, N. Y., of counsel; Macklin, Speer, Hanan & McKernan, New York City, on the brief), for petitioner-appellant, libellant-appellee.
 Christopher E. Heckman, New York City (Foley & Martin, New York City, on the brief), for claimants-appellees, F. S. Jacobus and Colonial Sand & Stone Co., Inc.
 Henry C. Eidenbach, New York City (Thomas P. Pender, New York City, of counsel; Hill, Rivkins, Middleton, Louis & Warburton, New York City, on the brief), for respondent-appellant.
 Before LUMBARD, Chief Judge, MOORE, Circuit Judge, and STEEL, District Judge.*
 LEONARD P. MOORE, Circuit Judge.
 These are appeals from interlocutory decrees in admiralty which were entered after a trial of two separate but consolidated proceedings. The first is a petition by Jacob Rice & Sons (Rice), owners of the scow Joan R., for limitation of and/or exoneration from liability. In this proceeding, there were three claimants: (1) New York Trap Rock Corporation (Trap Rock), the charterer of the Joan R.; Frank S. Jacobus (Jacobus), the owner of the scow J. P. Curry; and (3) Colonial Sand & Stone Company (Colonial), the owner of the scow Central Light. The other proceeding is a libel by the owners of the Joan R. against Trap Rock in which the latter impleaded the Red Star Towing and Transportation Company and Colonial.
 At the conclusion of the trial, the court disposed of the libel by holding Trap Rock responsible for the damage to the Joan R. and by dismissing the impleading petitions. As to the limitation feature of the case, the court ruled that Rice was entitled to limitation of liability, but that the claimants Colonial and Jacobus were entitled to a maritime lien in rem against the Joan R. and accordingly exoneration was denied. The claim of Trap Rock was also denied. Trap Rock appeals from the interlocutory decree in favor of Rice on the grounds (1) that Trap Rock by its proof overcame the presumption of liability because of damage to the Joan R. while in Trap Rock's possession and (2) that the trial court erroneously placed the burden of proof on Trap Rock to account for the capsizing of the Joan R. Rice in turn appeals from that part of the decree in the exoneration proceeding which allows the claims of Jacobus and Colonial against Rice.
 This controversy arose out of the following facts: On March 29, 1954, the Joan R., a wooden deck scow, was committed to the possession of Trap Rock under an oral demise charter. Along with the Joan R. went her captain, whose base wage (7:00 A.M. to 5:00 P.M.) was to be paid by Rice but whose overtime (5:00 P.M. to 7:00 A.M.), if any, was to be paid by Trap Rock. Between March 29th and May 19th, the Joan R. made six trips from various Trap Rock quarries to the New York metropolitan area without incident. On May 20th, she was loaded at Clinton Point with 545 cubic yards of stone, consigned to Colonial, and towed to Pier 72, North River, where she arrived at approximately 7:15 P.M. on Friday, May 21st. That night she was towed to a pier on the East River at the foot of Roosevelt Street, arriving at 12:30 A.M., Saturday. The scow J. P. Curry was alongside and made fast to the pier. The Joan R. was tied alongside of the J. P. Curry and later upon her arrival the scow Central Light was made fast to the Joan R. Some time on Sunday, the 23rd, about noon, the Joan R. capsized, dumping its cargo and damaging the adjacent scows, J. P. Curry and Central Light.
 
 
 1
 At the trial, substantial proof was introduced that the Joan R., although old, was in good condition and seaworthy at the time she was delivered to Trap Rock. An employee of Trap Rock testified that he inspected the Joan R. on May 19th before she was loaded, and again on May 20th after loading. Although he found her in good condition, he discovered about ¼ of an inch of water in the bottom of the boat on the first inspection, and 2 inches on the second — an amount which is normal for scows of this type. A prior captain of the Joan R. testified that she needed to be pumped every two days when loaded. After the accident, the Joan R. was taken into dry-dock and Allison, who operates the dry-dock company, testified that he found no leaks at all in the boat and that no work needed to be done on her bottom. However, there was testimony that there were a few places in the bottom of the Joan R. where water might have entered the hull.
 
 The Libel:
 
 2
 The trial court ruled that the Joan R. was seaworthy when delivered to the charterer and that, thus, the owner was entitled to the benefit of the presumption of negligence which arises whenever a bailee returns goods in a damaged condition. See, e. g., The Moran No. 10, D.C.S.D.N.Y.1924, 41 F.2d 255; Tomkins Cove Stone Co. v. Bleakley Transp. Co., Inc., 3 Cir., 1930, 40 F.2d 249; O'Boyle v. United States, 2 Cir., 1931, 47 F.2d 585. Although this presumption does not cast upon the charterer the burden of persuading the trier of fact that the accident happened without its negligence (Richmond Sand & Gravel Corp. v. Tidewater Const. Corp., 4 Cir., 1948, 170 F.2d 392), it does, nevertheless, require the charterer to come forward with evidence which shows "either how the barge was injured, or that however that was, it was not due to his neglect * * * The second alternative requires proof of all that the defendant has done with regard to it." Alpine Forwarding Co. v. Pennsylvania R. Co., 2 Cir., 1932, 60 F.2d 734, 736; Richmond Sand & Gravel Corp., supra. Once this standard is met, the presumption disappears entirely and the question of negligence is for the trier of fact just as it would be in any other case where no presumption exists. Commercial Molasses Corp. v. New York Tank Barge Corp., 1941, 314 U.S. 104, 111, 62 S.Ct. 156, 86 L.Ed. 89. Here, however, Trap Rock did not show how the accident occurred; nor was its proof as to all it had done sufficient to rebut the presumption.
 
 
 3
 It is unnecessary to indulge in speculative possibilities as to whether the Joan R. had been misloaded, overloaded or damaged on a prior trip. There is affirmative testimony that when loaded the Joan R. had to be pumped out every second day. The captain of the Joan R. was last seen aboard Friday night, May 21st. He was apparently absent Saturday and Sunday. There is no proof that the captain, although he was subject to Trap Rock's orders, or anyone else, made an inspection of the condition of the Joan R. on Saturday or Sunday. A casual passerby on Sunday morning noticed that the Joan R. had a serious list. He proceeded to the dock area and found neither captain nor watchman on the scows. Nor was any proof offered as to when the Joan R. had last been pumped or checked for water.
 
 
 4
 Thus, it is highly possible that the Joan R. had not been pumped for some time before the accident, that there was an accumulation of water in her hold, and that this condition plus the swells from passing boats caused her to capsize. Leaving a loaded scow unattended and uninspected over a week end might well be considered to be negligent. Upon the law and the facts, the trial court's conclusion of liability must be affirmed.
 
 
 5
 
 The Limitation and/or Exoneration Proceeding:
 
 
 
 6
 The only appeal taken from this phase of the proceedings below is from that portion of the decree which denies exoneration and in effect holds the Joan R. liable in rem for the damage to the J. P. Curry and the Central Light. In so holding, the trial court below reasoned that, although the accident occurred without the "privity and knowledge of the owners," thus entitling them to limitation of liability, exoneration must be denied because there was an unrebutted presumption of negligence upon the part of the charterer, and because a maritime lien arises in favor of a party injured by the negligence of anyone lawfully in control of the vessel.
 
 
 7
 Rice correctly argues that the presumption of negligence arising out of the bailor-bailee relationship, used to hold Trap Rock liable to Rice, would not be available in the limitation/exoneration proceeding to the claimants, Jacobus and Colonial, which were not parties to the charter. However, another presumption, namely, that an uncontrolled vessel which collides with another is presumed to have done so as a result of negligence, came into play. The Louisiana, 1865, 3 Wall. 164, 70 U.S. 164, 18 L.Ed. 85; The Buffalo, 2 Cir., 1932, 56 F.2d 738; The Trenton, 2 Cir., 1934, 72 F.2d 283. In order to rebut this presumption, evidence must be introduced that would permit reasonable men to infer that the damage was due to an unavoidable accident. See The Louisiana, supra; Swenson v. The Argonaut, 3 Cir., 1953, 204 F.2d 636. The Joan R. could be relieved of in rem liability only if the damage was not caused by the owner's or the charterer's negligence. The same state of facts would be sufficient to imply negligence. The scow captain was in Rice's employ. As captain he must have known of the need for pumping or at least the necessity for supervision and inspection from time to time. He was responsible for taking care of the scow. He also had similar duties on behalf of the charterer. Under these circumstances the Joan R. was liable in rem to the claimants as a matter of law. The Barnstable, 1901, 181 U.S. 464, 21 S.Ct. 684, 45 L.Ed. 954; The Stamford, D.C.S.D. N.Y.1929, 35 F.2d 55; Gilmore and Black, The Law of Admiralty, page 494.
 
 
 8
 There is no merit to the contention that the court below did not have jurisdiction to impose in rem liability. See Hartford Accident & Indemnity Co. v. Southern Pac. Co., 1927, 273 U.S. 207, 47 S.Ct. 357, 71 L.Ed. 612.
 
 
 9
 Affirmed.
 
 
 
 Notes:
 
 
 *
 Sitting by designation. U. S. District Judge for the Third Circuit