**HUDSON VALLEY LIGHTWEIGHT AGGREGATE CORP., as owner of the DECK BARGE SOLITE NO. 5, Plaintiff-Appellant,**

v.

**WINDSOR BUILDING AND SUPPLY CO., Inc. and TUG CALLANAN NO. 1, Defendants-Appellees.**

No. 496, Docket 35012.

United States Court of Appeals, Second Circuit.

Argued March 10, 1971.

Decided July 16, 1971.

Macklin, Hanan & McKernan, New York City (Timothy A. Hanan, New York City of counsel), for plaintiff-appellant.

Joseph Fennelly, Jr., New York City for defendant-appellee, Windsor Building and Supply Co., Inc.

Platow & Lyon, New York City (John P. Rowan, New York City of counsel), for defendant-appellee, Tug Callanan No. 1.

Before HAYS and FEINBERG, Circuit Judges, and CURTIN, District Judge.*

CURTIN, District Judge:

The appellant, Hudson Valley Lightweight Aggregate Corp. [Hudson Valley], was the owner of a steel deck barge, Solite No. 5, which Windsor Building and Supply Co., Inc. [Windsor] chartered under an oral contract. These companies were shipping aggregate to a construction site at West Point, New York, with Hudson Valley coordinating the shipping arrangements for both. Hudson Valley engaged the Tug Callanan No. 1, owned and operated by the Callanan Road Improvement Co., to tow the barge. On June 27, 1964, after the barge was loaded with aggregate by Windsor, and while in tow by the tug Callanan No. 1, the barge capsized in the Hudson River. The appellant's action for damages against Windsor and the tug owner was dismissed after a trial without a jury. We affirm Judge Lasker's decision, reported at 309 F.Supp. 1274 (1969).

■ Appellant's chief contentions at trial were that Windsor had overloaded the barge and that the tug had negligently hauled the barge. Upon proof by appellant-bailor, Hudson Valley, that it delivered the barge in good condition and that it was returned damaged, a prima facie case of negligence was made against the charterer, Windsor. In re Rice's Petition, 294 F.2d 272 (2d Cir. 1961); Alpine Forwarding Co. v. Pennsylvania R. R. Co., 60 F.2d 734 (2d Cir.),

cert. denied, 287 U.S. 647, 53 S.Ct. 93, 77 L.Ed. 559 (1932). On this appeal, Hudson Valley's principal argument is that Windsor not only did not meet the presumption against it, but in fact proved that the barge was overloaded. With respect to its action against the tug, Hudson Valley argues that the trial court was in error in failing to find that the tug had caused the barge to strike the side of a channel, thereby causing the cargo to shift and the barge to capsize.

■ The presumption of negligence against Windsor does not cast upon the bailee the ultimate burden of proving how the damage occurred. Richmond Sand and Gravel Corporation v. Tidewater Construction Corporation, 170 F.2d 392 (4th Cir. 1948); Alpine Forwarding Co. v. Pennsylvania R. R. Co., supra. The operation of the presumption requires only that the bailee, Windsor, (1) show how the accident occurrred and that this was not due to its negligence; or (2) that it exercised due care in its handling of the barge so that, no matter how the accident happened, it was not because of its negligence. Windsor was not able to show how the accident occurred but did offer proof of due care by offering evidence that it did not overload the barge.[1]

Relying on In re Rice's Petition, supra, the trial court properly held that, with Windsor's introduction of proof that the barge was properly loaded, the presumption dropped out of the case. The presumption is merely a procedural device. Alpine Forwarding Co. v. Pennsylvania R. R. Co., supra. Accordingly, the ultimate burden of proving the bailee's negligence remains on the bailor throughout.

The remaining arguments concern the trial court's findings of fact. In order to appreciate these arguments, it is nec-

---

* Of the United States District Court for the Western District of New York, sitting by designation.

1. The defendant, Windsor, called Edward P. Kolb, an employee of Hudson Valley, who testified that the barge was loaded to 1181 tons. In fresh water, the *Solite No. 5* had a safe carrying capacity of 1200 tons and, in salt water 1300 tons.

essary to set forth the offers of proof in greater detail.

The *Solite No. 5* is an unmanned steel deck barge without motive power. On June 25, 1964, Hudson Valley delivered the barge to the Windsor dock at Plum Point. Early in the morning of June 27, after Windsor had completed loading aggregate on the barge, the tug arrived and towed the loaded barge, through a man-made channel 600 feet long, 80 feet wide, and 12 feet deep, out to the main channel of the Hudson River. Upon reaching the river, the tug took the barge on its starboard side for the trip to West Point. The weather was clear, the river calm, and the average speed of the tow was about six knots. At about 3:00 a. m. on June 27, while under way, the barge began to list, the tug cut her loose, and the barge capsized and dumped her load in about 60 feet of water. The tug then towed the capsized barge back to shore.

The maximum safe carrying capacity of the *Solite No. 5* was 1200 short tons in fresh water and 1300 short tons in salt water. Therefore, to determine whether the barge was overloaded, it was important to know the salinity of the water. A witness for Windsor testified that the water at Plum Point Facility, the place of loading, was "essentially fresh. There is a touch of salt in it but not enough to matter as a rule." However, on cross-examination, this witness stated the basis for his conclusion is "hearsay, if you want." Appellant's counsel informed the trial court that the water was "brackish * * * somewhere in between" fresh and salt water. There was no evidence offered to show the salinity of the water in the Hudson where the capsizing occurred.

On the question of whether Windsor overloaded the barge, varying computations of the cargo tonnage were offered by both Hudson Valley and Windsor. By assuming that the barge had four inches of freeboard while loaded in fresh water, the appellant's expert testified that the load was 1251 short tons. A witness called by Windsor computed the load at 1181 short tons. In a post-trial brief, appellant's counsel placed the figure at 1193 short tons.

Windsor introduced a displacement chart issued by the builder of *Solite No. 5*, which indicated that, was a freeboard of four inches, the barge carried a cargo of 1275 short tons in fresh water and 1315 short tons in salt water.

■ In the face of this conflicting evidence, the trial court found that the water was brackish and the barge was laden with 1251 short tons. These findings must stand unless clearly erroneous. Fed.R.Civ.P. 52(a). While there is room to doubt the accuracy of the accepted computation and find that the barge was overloaded, there is also evidence to support it. Since this court, after viewing the entire record, is not left with a definite and firm conviction that a mistake has been committed, we cannot upset the findings as clearly erroneous. Heyman v. AR. Winarick, Inc., 325 F.2d 584, 589 (2d Cir. 1963).

■ To recover against the tug, *Callanan No. 1*, the appellant had to prove negligent conduct on the part of the tug which caused the damage. It is not aided by any presumptions. Furthermore, since the barge capsized under normal conditions, with fair weather and calm seas, there is a presumption of unseaworthiness in the absence of proof that the barge was improperly handled by the tug. South, Inc. v. Moran Towing & Transportation Co., 360 F.2d 1002 (2d Cir. 1966). Although the appellant theorized that the barge struck the side of a channel while passing through, there is no evidence to support this claim or, in fact, to show how the accident happened. The trial court properly held that the appellant failed to carry its burden of proof against the tug.

We have examined the other arguments of the appellant, but find them to be without merit.

Affirmed.