## HAMS v. LUCKENBACH TERMINALS, Inc.

### No. 32 A.

### District Court, D. New Jersey.

### April 25, 1941.

Winifred Sullivan, of New York City, for libelant.

Clarence Kelsey, of Jersey City, N. J. (Raymond E. Stefferson, of New York City, of counsel), for respondent.

FORMAN, District Judge.

Libelant sues for damages sustained by the derrick lighter J. R. McDonald while berthed in respondent's basin at Edgewater, New Jersey.

Some time in October, 1939, the libelant communicated with respondent's representative and superintendent of the basin, Edwin Mewhinney, with regard to storage of a boat or boats, and more particularly with reference to the rates therefor. About three weeks thereafter on Sunday, November 12, 1939 the J. R. McDonald, then lying at the D. & H. Basin, Weehawken, N. J., was removed to respondent's basin, being towed by the tug Service which was owned and operated by William Casey. The libelant and two hands were on board the J. R. McDonald.

The respondent's basin is situated on the eastern bank of the Hudson River and for our purposes its physical contour may be described as resembling the shape of a horseshoe the sides of which connect with the river. Extending from the southern side about midway and lying broadside, were a tier of about four boats. The J. R.

McDonald was berthed with her starboard side lying along the ends of these four boats, being between them and the beach or the curved end of the horseshoe.

On April 20, 1940, during a storm, the J. R. McDonald was damaged. During or following this storm some wreckage from a boat, apparently the siding of a vessel, several feet wide and approximately 100 feet long appeared with one end resting on the beach or curved end of the horseshoe, and projecting approximately at right angles to the port side of the J. R. McDonald.

Extending upwards from the plane of the siding, and at right angles to the end of this siding, were posts or "knees" about two feet in height, spaced at uniform intervals. Eight of these knees or fragments thereof are visible. The bilge log of the J. R. McDonald rests atop or on the eighth knee.

A survey of damage was called by libelant which was held on May 17, 1940. The report of this investigation signed in behalf of libelant and respondent without prejudice states that the survey was made while the lighter was lying on the beach "with her bottom on her port side forward impinged on a wreck", and continues: " * * * This wreck being the side of a barge consisting of side planking with king posts & intermediate frame timbers and beam knees protruding upwards. Knees are impinged upwards into the Bilge log and bottom of lighter. Lighter is twisted and strained with its port side up eighteen inches forward and knees in hold are started and pulled in fastening. Fourteen bottom planking found off on port side forward."

The libel claims damage for injuries sustained to the bottom of the J. R. McDonald by virtue of its impingement upon the knees projecting from the wreckage, plus the cost of removing her to dry dock.

Posted on the outside of respondent's office building near its basin was the following notice:

"We notify all Owners and Captains of any type of Boat, while stored or berthed in this basin, that we will not be responsible for any Damage, Theft or Fire or be accountable for any line attached to boats.

"Boats are Berthed at Owners Risk
"Luckenbach Terminals, Inc."

Inside the office was posted another notice consisting of two pages in pamphlet form with printed matter on opposite sides of the first page. This notice gave rates for storage (a flat rate was indicated for the winter season—November 1 to April 30, inclusive) of vessels in the basin with limited liability and different rates for such storage with unlimited liability. Under either scale notice of damage in writing was to be given in ten days.

Libelant denies that prior to the damage sustained he saw the notice with reference to limited and unlimited liability. In addition, there was considerable dispute as to whether all three pages of this pamphlet notice were displayed. Furthermore, libelant does not assert that the ten-day notice of damage was given, since respondent had personal knowledge of the event.

Libelant admits, however, that about three weeks after he berthed the J. R. McDonald the notice on the outside of respondent's office building was brought to his attention, and that he signed some receipt at that time at Edwin Mewhinney's suggestion which incorporated the provisions of the notice. Libelant asserts Mewhinney stated this receipt concerned only theft from the boat such as tackle, and that since all his things were locked up on the boat he willingly signed. This receipt was not produced in evidence.

The testimony with relation to the terms of the contract under which the J. R. McDonald was stored, aside from whether the above notices were incorporated therein, is vague. Libelant never received a bill for storage, indicating no contract was ever made according to respondent, but this is explained by the fact that it was stored at winter rates payable at the end of the season (the boat was damaged prior to that time). Furthermore, the record does not disclose that libelant and respondent agreed specifically as to the storage of the J. R. McDonald under terms of any sort.

Similar contradictions are projected into the case with regard to the condition of the J. R. McDonald. Respondent asserts that the boat's three water pumps were busily engaged at and after the time she was berthed, and that water leaked through and out of her seams. Respondent states she would not float at high tide and that she was water-logged. Claim is made that libelant recognizing her condition brought her in for repairs. Respondent's witness, Theodore E. Demars, testified that she was unseaworthy and that the spikes holding her bottom were corroded. Respondent also testified that the vessel was placed in one berth on November 12, 1940, and was

removed to the berth where the damage occured a few days afterwards. By virtue of this condition respondent claims to have rejected the J. R. McDonald. This rejection was denied. In addition to showing basic grounds for rejection, this evidence was apparently intended to show that the vessel was not damaged by her alleged impingement on the wreckage, but that her condition or alleged damage was due to natural deterioration. Libelant contends that the boat did not leak, and, hence, he did no pumping, that he did not dock for repairs, and that the vessel was never moved from her original berth.

This libel is founded upon negligence—a failure to maintain a safe berth for the J. R. McDonald. The damage is alleged to have been sustained during the storm of April 20, 1940, by virtue of the J. R. McDonald's bottom being impinged upon the knees or posts extending upwards from the wreckage. Negligence predicated upon any defect in the basin existing prior to the appearance of this wreckage is not claimed. With reference to its origin testimony was offered to show that there were several known wrecks in the vicinity of respondent's basin which might have drifted in. But whether this particular wreckage was a part of these familiar derelicts is left to conjecture. Whether or not these wrecks were in such proximity to the respondent's basin as to create a hazard and call upon respondent to exercise care to prevent their encroachment upon its premises is also charged with speculation. Furthermore, the wreckage lying in respondent's basin was not identified with any familiar wrecks in the vicinity. Hence, we can only say it came in with the storm of April 20, 1940. How and why we do not know.

 The duty of a wharfinger is to exercise reasonable care in ascertaining the condition of the berths at his wharf and to remove dangerous obstructions or give due notice of the existence thereof to vessels about to use the berths. This means that a wharfinger is bound to exercise ordinary care and diligence in the transaction of his business, and it is the duty of a libelant to prove negligence. Connecticut Fire Ins. Co. v. Smith & Richards Lumber Co., D.C., 28 F.Supp. 770. Lack of care is never presumed; it must be shown by a fair preponderance of the evidence, Stevens v. Maritime Warehouse Co., Inc., 2 Cir., 263 F. 68. The parties hereto are not at odds with this proposition.

 We do not see any failure of duty upon the respondent's part in permitting the wreckage to appear during the storm of April 20, 1940. That was beyond its control.

There is likewise a failure to prove that the presence of the wreckage was the proximate cause of the damage. There is no proof that the J. R. McDonald was damaged by virtue of its impingement upon the knees extending upwards from the wreckage. It is not claimed that the knee upon which the bilge log of the vessel rested punctured her bottom. Libelant contends that there are other knees beyond the one on which the bilge log rested which protruded through her bottom. No witness offered positive testimony that such was the fact. The only intimation that such is the case is found in the report of the survey quoted hereinabove. Theodore E. Demars who represented the respondent and signed the report of this survey denied at the trial that any knees were impinged upon the boat beyond the one on which the bilge log rested. The libelant went down into the hold of the vessel and he testified that some things were sticking through her bottom which he imagined were the knees. William Casey also went down inside but he did not see any knees protruding—he did not have a flashlight.

Concisely, libelant has failed to prove negligence of the respondent in permitting the wreckage to appear on the beach, and it has likewise failed to prove that there is a causal connection between the wreckage and the alleged damage.

The libel will be dismissed.