601 F.2d 645
 UNITED STATES of America, Plaintiff-Appellant-Cross-Appellee,
v.
MOWBRAY'S FLOATING EQUIPMENT EXCHANGE, INC., and Ellis
Marine Corporation, Defendants-Appellees.
UNITED STATES of America, Plaintiff-Appellant-Cross-Appellee,
v.
Edward ATMANCHUCK et al., and LIGHTER VICTOR, in rem,
Defendants-Appellees-Cross-Appellants.
 No. 758, Docket 78-6176.
 United States Court of Appeals,
Second Circuit.
 Argued April 5, 1979.
Decided June 15, 1979.
 
 Gilbert S. Fleischer, New York City, for plaintiff-appellant-cross-appellee.
 James M. Kenny, New York City (McHugh, Heckman, Smith & Leonard, New York City, of counsel), for defendants-appellees.
 Peter J. Dean, New York City (Bernard Rolnick, New York City, of counsel), for defendants-appellees-cross-appellants.
 Before MULLIGAN, TIMBERS and VAN GRAAFEILAND, Circuit Judges.
 MULLIGAN, Circuit Judge:
 
 
 1
 On April 19, 1973 the vessel Victor sank while tied at its berth in the Morris Canal Basin in New Jersey. Subsequently, oil seeped from the vessel into New York harbor. The instant action was commenced by the United States in the Southern District of New York to recover the clean up costs incurred by the U.S. Coast Guard as a result of the seepage. Appellant Atmanchuck, the owner of the Victor, cross-claimed against Ellis Marine Corporation and Mowbray's Floating Equipment Exchange, Inc. (collectively "Ellis"), the wharfingers of the vessel. The cross-claim alleged that if Atmanchuck or the vessel In rem were held liable to the Government, appellant was entitled to contribution on the ground that Ellis was negligent in the performance of its duties as wharfinger. Additionally, Atmanchuck sought from Ellis compensation for the loss of the Victor and lost profits from the future sale of the vessel.
 
 
 2
 After a two day bench trial the Hon. Whitman Knapp found the vessel liable In rem for $62,737, held Atmanchuck liable for $32,490, and dismissed the Government's claim against Ellis. The court also dismissed Atmanchuck's cross-claim. We affirm.
 
 
 3
 It was agreed below and on this appeal that as the lessor of a berth at its wharf to Atmanchuck, Ellis owed appellant the duty of a wharfinger. See Berwind-White Coal Mining Co. v. City of New York, 135 F.2d 443, 445 (2d Cir. 1943). A wharfinger's obligation is not to "guarantee the safety of vessels coming to his wharves" but "to exercise reasonable diligence in ascertaining the condition of the berths thereat, and if there is any dangerous obstruction to remove it, or to give due notice of its existence to vessels about to use the berths." Smith v. Burnett, 173 U.S. 430, 433, 19 S.Ct. 442, 443, 43 L.Ed. 756 (1899); accord, Paragon Oil Co. v. Republic Tankers, S.A., 310 F.2d 169, 173 (2d Cir. 1962); Berwind-White Coal Mining Co. v. City of New York, supra. To establish a wharfinger's liability for the sinking of a vessel at the wharf the vessel owner must make out a case of negligence against the wharfinger. See M. & J. Tracy, Inc. v. Marks, Lissberger & Son, Inc., 283 F. 100, 101 (2d Cir. 1922); Hams v. Luckenbach Terminals, Inc., 38 F.Supp. 485, 487 (D.N.J. 1941). Essential to any negligence case is a showing by the plaintiff that the negligence of the defendant in fact caused plaintiff's injury. E.g., Becker v. Colonial Parking, Inc., 133 U.S.App.D.C. 213, 220, 409 F.2d 1130, 1137 (1969). The trial court found that here Atmanchuck had failed to establish any cause at all for the sinking of the Victor. We would disturb such a factual finding by the district judge at a bench trial only upon a showing that it was clearly erroneous. See McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954); SS Amazonia Companhia De Navegacao Maritima Netumar v. New Jersey Export Marine Carpenters, Inc., 564 F.2d 5, 8 (2d Cir. 1977). See also Mamiye Bros. v. Barber Steamship Lines, Inc., 360 F.2d 774, 777 (2d Cir. 1966), cert. denied, 385 U.S. 835, 87 S.Ct. 80, 17 L.Ed.2d 70 (1966).[1] But on the record before us we cannot say that the trial court clearly erred in making that determination.[2]
 
 
 4
 The evidence showed that the Victor was a 115 foot "lighter," or flat-bottomed barge, constructed in 1929. In early 1971 Atmanchuck bought the vessel "as is where is" from Ellis for $3,000 with the intent of repowering the vessel and outfitting it as a container carrier. At the time the Victor sank Atmanchuck was receiving wharfage from Ellis in consideration for work appellant was to perform at the wharf. On the night of April 19, 1973 the vessel was in the berth where it had been moored for over four months. An employee of Atmanchuck was on board the Victor at 6:30 that evening but noted nothing unusual. The Victor sank at its berth during the night with its four mooring lines still tied.
 
 
 5
 Atmanchuck testified that a constant 45 m.p.h. wind "blew all night" on the 19th of April. He theorized to the court that this strong wind caused an exceptionally low tide which allowed the Victor to become "hung up" on an alleged submerged vessel near the berth. But weather records for the night in question completely refuted Atmanchuck's testimony of a brisk wind which could have caused such tidal conditions. Moreover, Atmanchuck presented only skimpy and vigorously controverted evidence that any submerged wreck was in close proximity to the Victor's berth on the date of the incident. After hearing all the testimony Judge Knapp simply concluded that he was forced to speculate on the cause of the Victor's demise because appellant had not demonstrated the cause of the sinking. See Stevens v. Maritime Warehouse Co., 263 F. 68, 70 (2d Cir. 1920). Our review confirms that this finding is more than amply supported by the record.
 
 
 6
 To avoid the consequences of his failure to make out a crucial element of a negligence case against appellees, Atmanchuck asserts that Ellis was a bailee of the Victor. Appellant claims that his delivery of the vessel to Ellis in a seaworthy condition coupled with the subsequent sinking of the lighter give rise to an inference of negligence against the bailee. Cf. United Barge Co. v. Notre Dame Fleeting & Towing Service, Inc., 568 F.2d 599, 602 n.5 (8th Cir. 1978). Under such circumstances a bailee would then be required to come forward with evidence to rebut the inference of negligence. See, e.g., id.; United States Fire Insurance Co. v. Brokamp and Bressler, Inc., 296 F.2d 81, 83 (6th Cir. 1961).
 
 
 7
 We need not determine whether or not a bailment existed in this case. The appellant depends upon the rule that the burden of going forward with evidence of due care has devolved upon Ellis. However, it is established law that no inference of negligence against the bailee arises if his possession of the damaged bailed property was not exclusive of that of the bailor. Pan-American Petroleum Transport Co. v. Robins Dry Dock & Repair Co., 281 F. 97, 107 (2d Cir. 1922). See also 8 Am.Jur.2d Bailments § 56. Throughout the time that the Victor was berthed at the wharf, Atmanchuck and his agents not Ellis repaired and overhauled the vessel. The wharf was not enclosed or fenced off; Atmanchuck had unimpeded access to the Victor. No request for permission to board her was made of or required by Ellis. In fact an employee of Atmanchuck was on board the vessel earlier in the evening on the very night the vessel sank.
 
 
 8
 The reason for the rule that a bailee who fails to return goods or returns damaged goods to the bailor has the obligation of rebutting an inference of negligence is that normally the bailor has no way of knowing what happened to the goods entrusted to his bailee. R. Brown, The Law of Personal Property § 87 at 359 (2d ed. 1955). The appellant here was obviously under no such disadvantage. He and his employees enjoyed daily access to the vessel which they were repowering.
 
 
 9
 Affirmed.
 
 
 
 [1]
 The question whether defendant's negligence was a cause in fact of plaintiff's injury must be distinguished from the question of "proximate" or "legal" causation, which is subject to more searching review in this circuit, Mamiye Bros. v. Barber Steamship Lines, Inc., supra, 360 F.2d at 777-78, as is the ultimate determination of whether a defendant was negligent. Id. at 776; see Master Shipping Agency, Inc. v. M. S. Farida, 571 F.2d 131, 133 (2d Cir. 1978). We would in any event reach the same result in this case if the district court's finding were open to plenary review. Cf. Karavos Compania Naviera S.A. v. Atlantica Export Corp., 588 F.2d 1, 8-9 (2d Cir. 1978)
 
 
 [2]
 The district court further found that appellant had not proven the berth was unsafe. We need not reach that question in view of our affirmance on the other ground upon which Judge Knapp dismissed the claim